BROWN, executor of *Catharine Newman, against* BROWN

and another.

The promissory note of a third person, not payable to bearer, nor so indorsed as to transfer the legal title by delivery merely, may be the subject of a *donatio causa mortis.*

Therefore, where *A,* in her last sickness, and in anticipation of her approaching death, delivered to *B* a promissory note, which *A* had previously taken of *C,* together with a mortgage of real estate to secure the payment of such note; *A* intending such delivery as a *donatio causa mortis,* and *B* receiving it as such; but the mortgage deed was not mentioned, at this time, and it remained in the hands of *A* until her death; it was held, that this was a good *donatio causa mortis.*

THIS was a bill of foreclosure.

On the 15th of *April* 1844, the defendant, being indebted to *Catharine Newman* in the sum of 1600 dollars, gave her his promissory note for that sum, and executed to her a mortgage of real estate to secure the payment of the note. In *December* 1845, *C. Newman,* in her last sickness, and in anti-

cipation of her approaching death, delivered said note to *Harriet E. Scofield*, one of the defendants; the former intending such delivery as a *donatio causa mortis*, and the latter receiving it as such. The mortgage deed given to secure the payment of the note, was not mentioned, at this time; and it remained in the hands of *C. Newman* until her death, and then came into the possession of the plaintiff, as her executor.

The case was reserved for the advice of this court as to what decree ought to be passed.

*Hawley* and *Ferris*, for the plaintiff, contended, That the facts in the case did not show a valid *donatio causa mortis* to *H. E. Scofield*, and that the note in question belongs to the plaintiff as executor; and that consequently, he is entitled to a decree of foreclosure. In support of this position, the following considerations were urged.

In the first place, the law in regard to gifts *causa mortis*, ought not to be extended. It opens a wide door to fraud and imposition, and is entirely opposed to the policy of the laws relating to dispositions of property to take effect after death. These gifts, when sustained, always necessarily break in either upon a will, executed with all legal solemnities and formalities, or upon the just expectations of the heirs. From their nature, also, they are always made when the donor is prostrated in body, enfeebled in mind, and is in prospect of speedy death; when every practicable guard against imposition is peculiarly desirable. In the case of *Raymond* v. *Selleck*, 10 *Conn. R.* 480. the court clearly manifest a disposition to adhere to the old law, regardless of more modern decisions which relax and extend it.

Secondly, by the *English* law, adopted in this state up to this time, promissory notes &c., the title of which is not transferable by delivery, are not subjects of such gifts; in other words, gifts of such *choses, causa mortis*, are not valid. This is true also of *South Sea* annuities; of certificates of bank stock; of simple contract debts; of arrears of rent, &c.; of checks on banks not cashed in the donor's life-time; of bills of exchange not transferable by delivery; and generally, where no property, no title, is transferred to the donee, by the delivery of the subject. 1 *Williams on Exrs.* 504. *Tol-*

*Fairfield,*
*July, 1847.*

Brown, exr.
*v.*
Brown.

*ler* 235. 2 *Mad. Chan. c.* 5.  In this case, the note in question was not transferable by delivery, being neither payable to bearer, nor indorsed in blank.

Thirdly, it is found, that the mortgage given to secure the note, was *not delivered,* but retained by *Mrs. Newman.*  This case is, therefore, distinguishable from some cases which may be cited, in two particulars.  It is not the case of a *bond,* which, in the language of the books, " is itself the foundation of the action ;" (*Toller* 235.) but of a mere note, which is only "evidence of a contract ;" and the mortgage, which furnished security for the payment of the money, was retained by *Mrs. Newman.    Toller* 236.    *Miller* v. *Miller,* 3  *P. Wms.* 356.    *Tate* v. *Hilbert,* 2 *Ves. jun.* 120.    S. C. 4 *Bro. Ch. Ca.* 286.

Fourthly, the gift cannot be made effectual, without the aid of a court of chancery; and chancery will not interfere among mere volunteers, nor to compel the completion of a mere gift.    1 *Sto. Eq.* 414. & *n.*

Fifthly, if the delivery of a note constitutes a good *donatio causa mortis,* so of course would that of a due-bill, or any other evidence of indebtedness ; and why not of the donor's books of accounts, or the evidence of book debts ?    Go the extent of the claim here, and the old rule is entirely done away, and any and every chose in action, or evidence of indebtedness, may be the subject of a *donatio causa mortis.*

Sixthly, there is no necessity for the extension of the rule ; for the whole object of the donor can be very easily accomplished, by a codicil, if a will has been already made, or by a will bequeathing the particular article, where in other respects the donor intends to die intestate.

*Bissell* and *Minor,* for the defendants, in behalf of *H. E. Scofield,* the party in interest, contended, 1. That a promissory note, though not payable to bearer, or indorsed, but actually delivered, is a proper subject of a gift *causa mortis.*

In the first place, it is well settled in *England,* that a *bond* is a good subject of such a gift.  Promissory notes having been made assignable, either by indorsement, or by delivery without indorsement, the reason of the distinction between bonds and notes, no longer exists.  The authorities in this country support gifts of notes *causa mortis ;* the only deliv-

*Fairfield,*
July, 1847.

Brown, exr.
*v.*
Brown.

ery necessary being such as the thing given is susceptible of. *Contant* v. *Schuyler*, 1 *Paige* 316. *Grover*, admr. v. *Grover*, 24 *Pick*. 261. *Borneman*, admr. v. *Sidlinger*, 21 *Maine R.* 185. *Snellgrove* v. *Bailey*, 3 *Atk.* 214. *Ward* v. *Turner*, 2 *Ves.* 431. *Duffield* v. *Elwes*, 1 *Bligh N. S.* 542. *Wright* v. *Wright* & al. 1 *Cowen* 598. *Parish* v. *Stone*, 14 *Pick.* 198. *Selleck* v. *Raymond*, 10 *Conn. R.* 480. *Wells*, admr. v. *Tucker* & ux. 3 *Binn* . 366.

Secondly, the assignment of a promissory note, without indorsement, transfers to the assignee the interest in the note, and if secured by mortgage, the beneficial interest in the mortgaged premises. *Jones* v. *Witter*, 13 *Mass. R.* 304. *Colbourn* v. *Rossiter*, 2 *Conn. R.* 503. *Crosby* v. *Brownson*, 2 *Day* 425. *Austin* v. *Burbank*, 2 *Day* 474.

HINMAN, J. The finding in this case presents the question, whether the promissory note of a third person, not payable to bearer, or so indorsed as to transfer the legal title by delivery merely, may be the subject of a *donatio causa mortis.*

Without going into a review of the authorities upon this question, it is sufficient to say, that the principles applicable to ordinary gifts *inter vivos*, were formerly applied to this species of donation; consequently, choses in action were considered not to be the proper subjects of it. Gifts must be accompanied by delivery of possession. They must therefore be of something which is capable of delivery; and as nothing incorporeal is, strictly speaking, capable of delivery, it is, says *Powell*, "perfectly clear, that a debt, being a chose in action, cannot in itself be the subject of delivery; for it is an incorporeal thing." From this doctrine, in connexion with the principle that choses in action are not, at law, assignable, it followed, that they could not be the subject of gift, either at law, or in equity. It appears to me, says the same author, that there can be no such thing as an equitable gift or donation, which is not also a legal gift or donation; for if it be a contract, it is *nudum pactum*, and, for want of a consideration, gives no civil right that can be maintained in equity. *Pow. on Mort.* 119. 120.

Perhaps it would have been better, had the courts rigidly adhered to this ancient doctrine. Small pieces of paper, in the shape of bonds, bills, and notes, though the evidences of

*Fairfield,*
July, 1847.
———————
Brown, exr.
*v.*
Brown.

debt to a large amount, may sometimes be very easily obtained from a dying man, under such circumstances as to make it very difficult for courts to say, that they were not fairly obtained, while the persons, who, having obtained them, by a little artful importunity, are conscious that their efforts would have been ineffectual, had the donors possessed the vigorous exercise of their faculties. As a question of policy, therefore, it may be well doubted, whether the ancient doctrine is not the most satisfactory. But the policy of the law has but little to do with the question now. If we felt at liberty to enter into that, it might admit of a doubt whether it would not have been better never to have introduced into the law the doctrine of *donatio mortis causa* at all; or, perhaps, whether it would not now be better to abolish it. There certainly seems to be much force in the suggestion, that it would have been better to have required, in all cases, the easy formalities of a written will, than to have adopted a species of will, so easily perverted, and fraught with so much danger of imposition and fraud. However this may be, the doctrine is now firmly established; and courts must administer it as they find it. There can be no benefit in incumbering it with arbitrary rules, inconsistent in themselves, and not founded in reason, or upon any practical principle.

By the modern *English* cases, bonds, mortgages and bank notes, are held to be proper subjects of this species of donation. It has not, to our knowledge, as yet been held, that the notes of third persons may be disposed of, in this way: but the principles upon which it is so held in regard to other choses in action, appear to be as applicable to notes as to them. In one of the first cases on the subject, it was held, that a hundred pound bank bill was a good *donatio causa mortis.* *Drury* v. *Smith,* 1 *P. Wms.* 404. The reason of this is said to be, because the property in bank notes is transferred, by delivery merely: that is to say, the legal title to them passes by delivery. This reason obviously applies to all negotiable instruments payable to bearer, or indorsed in blank by the payee; and it is accordingly laid down in 1 *Williams on Exrs.* 548. that all such instruments may be the subject of this kind of donation. Lord *Hardwicke* afterwards held, that a bond might be disposed of in this way; and though he subsequently expressed his determination to stop there, and

attempted to distinguish his decision from the case of receipts for *South Sea* annuities, and other choses in action ; yet his reasoning has never been satisfactory. He said, that though a bond was a chose in action, yet it was itself the only evidence of the debt ; that it could not be sued without a *profert* of it in court; and the delivery of it, therefore, put it in the power of the donee, by destroying it, to prevent the donor from ever using it; and therefore, some property passed to the donee, by its delivery. *Snellgrove* v. *Bailey,* 3 *Atk.* 214. *Ward* v. *Turner,* 2 *Ves.* 431. 441. This reasoning seems at best to be artificial. It clearly does not show any real distinction between bonds and other choses in action, in the particulars mentioned. Undoubtedly, it is in the power of a donee to destroy a bond, or any other paper evidence of debt: and in regard to the necessity of making *profert* of the instrument, when sued upon, Lord *Eldon,* in *Duffield* v. *Elwes,* 1 *Bligh N. S.* 542. says, that the great judge who gave that reason, did not then foresee the change in the law in regard to suits on lost instruments, by which a person may now bring an action on a bond, without making *profert* of it.

In the case last cited, it was held, by the house of Lords, that a mortgage would pass as a *donatio causa mortis ;* and the doctrine of the earlier *English* cases, applying to this species of donation the principles applicable to ordinary gifts, seems to have been expressly repudiated. " The question," says Lord *Eldon,* " is not, and never can be, what the donor can be compelled to do ; but what the donee can call upon the representatives of the donor to do : in other words, whether the executor, in the case of a gift of personal property, and the heir, in the case of a gift affecting the realty, is not, by virtue of the trust, arising by operation of law, a trustee for the donee." If this is so, then the true reason why a bond will pass to a donee *causa mortis,* is not because he has the power of destroying it ; nor because *profert* must be made of it, when sued ; nor even because it is a security of a higher nature than some other choses in action ; but it is, because the donee has, in equity, a right to enforce payment of it, and to treat the executors of the donor as trustees for his benefit: in other words, it is because a bond, like the note of a third person, is assignable in equity ; and the principle that courts of equity will not compel the completion of mere

*Fairfield,*
July, 1847.
———
Brown, exr.
*v.*
Brown.

voluntary gifts or conveyances, does not apply to donations *causa mortis.* Hence, says the same judge, when speaking of a mortgage, " The opinion which I have formed, is, that this is a good *donatio mortis causa,* raising by operation of law a trust—a trust which, being raised by operation of law, is not within the statute of frauds, but a trust which a court of equity will execute."

It is true, undoubtedly, that this species of donation so far resembles an ordinary gift, that all the possession which the nature of the thing is susceptible of, should be delivered ; (*Raymond* v. *Selleck,* 10 *Conn. R.* 480.) but it differs from a gift, and more nearly resembles a legacy, in respect to the right of the donee to the aid of a court, in order to make his donation available.

Notes and mortgages have, in this state, to a great extent, taken the place of bonds and mortgages as securities for permanent loans ; and to make an arbitrary distinction between them, in respect to the power of the holders of them to dispose of them in this way, could subserve no beneficial object, and would be liable to cause much practical inconvenience, if not injustice. A person who should wish to dispose of a portion of his estate, in this way, would not be very likely to see, or to recognize in practice, the principle, that would enable him to give to one object of his bounty, a bond ; to another, the note of some third person, because it was payable to bearer ; and, at the same time, would preclude him from giving to a third, a note and mortgage of equal value, because it was so drawn as not to pass the legal title by delivery.

It is said, that in *Raymond* v. *Selleck,* the court manifested a disposition to adhere to the old law, regardless of the modern decisions which extend it. We do not so understand that decision. The note, in that case, was not given as a *donatio mortis causa;* but, if any thing, it was a gift *inter vivos;* it was a mere promise to pay, by the party himself; and, there being no consideration for it, it was of course void. We do not mean to say, however, that, had it been executed and delivered, as a donation *causa mortis,* it would have been good. In *Massachusetts,* such a gift of the donor's own note, would not be good, while the gift of the note of a third person would be. *Parish* & al. v. *Stone,* 14 *Pick.* 198.

*Grover*, admr. v. *Grover*, 24 *Pick*. 261.    Indeed, the general current of decisions, in this country, is decidedly in favour of the conclusion to which we have arrived, in this case, and recognize notes as the proper subjects of this species of donation.    *Contant* v. *Schuyler* & al. 1 *Paige* 316.    *Grover*, admr. v. *Grover*, 24 *Pick*. 261.    *Wright* v. *Wright* & al. 1 *Cowen* 598.    1 *Sto. Eq.* 563,4.    *Borneman* v. *Sidlinger*, 8 *Shep.* (21 *Maine*,) 185.

*Fairfield,*
*July, 1847.*

Brown exr.
*v.*
Brown.

For these reasons, we are of opinion, that the executor of Mrs. *Newman* has no interest in the note and mortgage in question, which entitles him to a foreclosure ; and we so advise the superior court.

In this opinion the other Judges concurred.

Bill dismissed.