WM. KIFF, Administrator, v. SAMUEL WEAVER.

*Donatio Causa Mortis—Promissory Notes—Parties—Mortgage— Administrators—Estoppel.*

1. A *donatio causa mortis*, is a conditional gift, depending on the contingency of expected death. To constitute a *donatio causa mortis*, it must appear that the gift was made in view of the donor's death, that it is conditioned to take effect only on his death by his existing disorder, and there must be a delivery of the subject of the donation.

2. The equitable owner of bills, bonds and promissory notes can maintain an action on them in his own name, so the assignee of an unindorsed bond or note may bring an action on it in his own name.

3. The possession of an unindorsed negotiable note, payable to bearer, raises the presumption that the person producing it on the trial is the rightful owner thereof.

4. Bills, bonds and promissory notes, and all other evidences of debt, although payable to order and not endorsed, may be given as *donationes causa mortis*, and the donee may sue on them in his own name.

5. Where a bond secured by a mortgage is given as a *donatio causa mortis*, the mortgage goes with the bond even without a formal transfer of the security.

6. In an action by an administrator to recover certain bonds of his intestate, which the defendant alleged were given him as a *donatio causa mortis*, the defendant having possession of the bonds is not required to prove the gift by more than a preponderance of evidence.

7. While an administrator is estopped to deny the validity of an assignment of personal property made by his intestate in fraud of creditors, he is not estopped to deny a *donatio causa mortis*.

8. A *donatio causa mortis* partakes somewhat of the character of a testamentary disposition, but the assent of the personal representative is not essential to its validity. If needed to pay debts it may be recovered by the representative, but if there be a *residuum* of the gift after the payment of the debts, it goes to the donee and not to the intestate's estate.

(*Overton* v. *Sawyers*, 7 Jones, 6; *Fairly* v. *McLean*, 11 Ired., 158; *Brickhouse* v. *Brickhouse*, Ibid., 404; *Long* v. *Baker*, 2 Hay., 128 (191); *Hoke* v. *Carter*, 12 Ired., 324; *Andrews* v. *McDaniel*, 68 N. C., 385; *Jackson* v. *Love*, 82 N. C., 404; *Bank* v. *Bynum*, 84 N. C., 24; *Pate* v. *Brown*, 85 N. C., 166; *Moore* v. *Hobbs*, 77 N. C., 65; *Knight* v. *Houghtalling*, 85 N. C., 17; *Oates* v. *Kendall*, 67 N. C., 241; *Burton* v. *Farinholt*, 86 N. C., 260, cited and approved).

This was a CIVIL ACTION tried before *Shepherd, Judge,* and a jury, at the Fall Term, 1885, of Hertford Superior Court.

The action was brought by the plaintiff as administrator of James Kiff, deceased, to recover from the defendant, a number of notes, and mortgages executed to secure them, payable to James Kiff, the plaintiff's intestate, as described in the complaint, which it is alleged the defendant unlawfully withholds from the plaintiff. The defendant admitted that he held the possession of the bonds and mortgages, but denied that he held them unlawfully.

For a further defence, he pleaded as a counter-claim, that he was then, and was at the commencement of the action, the rightful owner and in possession of the said bonds, notes and mortgages. That James Kiff, the intestate, during his lifetime and in his last illness and in contemplation of his death, and but a short time before his death, gave and delivered to the defendant, said notes, bonds and mortgages, to and for his sole use and benefit.

The following issue was submitted to the jury:

"Is the plaintiff William Kiff, administrator of James Kiff, the owner and entitled to the possession of the notes, bonds and mortgages mentioned in the pleadings?"

It was admitted the bonds, &c., in controversy before the alleged gift, were the property of James Kiff. There was evidence tending to show that James Kiff died on the 4th of November, 1882, that he had been ill for several days; that on Sunday preceding his death, he had despaired of all hope of recovery; that in the presence of several witnesses, on said Sunday, he handed the bonds in controversy, (said bonds were not endorsed and were payable to order,) to the defendant, his natural son, and told him he gave him the same, to take and collect them, and that he might have the money and bonds in case he died; that ever since the delivery of said bonds, the defendant has been in possession of them, claiming the same as his own, by virtue of said gift; that James Kiff died of said illness on the following Tuesday.

There was also testimony tending to show the circumstances of James Kiff; that he had two sisters, and other natural chil-

dren; that at the time of the alleged gift he was indebted, and that he did not reserve sufficient property to pay such indebtedness.

No instructions were prayed for. Among other things, the Court charged the jury, that defendant must prove the gift by a preponderance of evidence, otherwise he was not entitled to a verdict. The Court also charged the jury, that they might consider the evidence of insolvency, along with the other circumstances, on the question as to whether the gift, as alleged by the defendant, was in fact made, but that if they found in favor of such gift, that the defendant would in this action be entitled to a verdict, notwithstanding the insolvency of the intestate, the Court holding that the gift, if made, related to the time of the delivery of the bonds, and that the administrator was estopped to attack it as fraudulent. The plaintiff excepted to this part of the charge.

The jury responded in the negative to the issue submitted, and the plaintiff moved for a new trial; (1) Because of the charge of the Court as to the degree of proof required of the defendant, and, (2) Because of the charge of the Court as to the estoppel of plaintiff.

The motion was over-ruled and judgment rendered for the defendant, from which plaintiff appealed to Supreme Court.

*Mr. B. B. Winborne*, for the plaintiff.
*Mr. David A. Barnes* and *J. B. Batchelor*, for the defendant.

ASHE, J. (after stating the facts). A *donatio causa mortis*, in *Nicholas* v. *Adams*, 2 Whar. 17, is defined by ch. Justice GIBSON, to be "a conditional gift, depending on the contingency of expected death, and that it was defeasible by revocation or delivery from the peril." To constitute a *donatio mortis causa* the circumstances must be such, as to show that the donor intended the gift to take effect, if he should die shortly afterwards, but that if he should recover, the thing should be restored to him. *Overton* v. *Sawyer*, 7 Jones, 6.

From this definition it results, that to constitute a *donatio mortis causa*, there must be three attributes. 1st. The gift must be with the view to the donor's death. 2nd. It must be conditioned to take effect only on the death of the donor by his existing disorder; and 3rd, there must be a delivery of the subject of donation—1 Williams on Ex. p. 686.

The donation in this case, possessed all the qualities of a *donatio causa mortis*. The donor in his last illness, on the Sunday previous to his death on the Tuesday following, while despairing of all hope of recovery, handed the bonds and mortgages in controversy, in the presence of several witnesses, to the defendant, and told him that " he gave him the same, to take and collect them, and that he might have the money and bonds in case he died," and that the defendant then took the bonds and mortgages, and has had possession of them ever since.

The plaintiff contended in this Court, that the counter-claim could not be maintained, because the title to bonds, bills of exchange and promissory notes, could only be passed by endorsement or assignment, and could not be transferred by mere delivery, so that the delivery of the bonds did not vest the legal title in the defendant, and could not constitute a good *donatio causa mortis*, and that the counter-claim was therefore defective, because it did not state facts sufficient to constitute a cause of action, and in support of his position, he relied upon the case of *Overton* v. *Sawyer*, 7 Jones, 6, where it was held, that bonds or sealed notes, given by delivery as a *donatio causa mortis*, may be recovered at law in an action of trover by the personal representative of the donor, and he also relied upon the cases of *Fairly* v. *McLean*, 11 Ired. 158, and *Brickhouse* v. *Brickhouse*, Ibid., 404. The two latter named cases, were actions of trover for the conversion of unindorsed promissory notes, the legal title to which could not, at that time, be transferred, except by indorsement, and the actions were at law.

But since that case was decided, a change has come over our system of legal procedure. Then an action had to be brought

upon an unnegotiable or unindorsed bond, in the name of the assignor, because he was held by the assignment to acquire only an equitable interest, which could not be enforced in a court of law, yet even in that case, the court of law so far recognized the interest of the assignee, as to protect it against the acts of the assignor. *Long* v. *Baker*, 2 Hay., 128 (191), and *Hoke* v. *Carter*, 12 Ired., 324. But now, under the new system, the action on such an instrument, must be brought by the real party in interest. The Code, §177.

The construction put upon this section is, that the assignee of. a bond or note not endorsed, is the proper person to maintain the action in his own name, because he is the real party in interest. *Andrews* v. *McDaniel*, 68 N. C., 385 ; *Jackson* v. *Love*,. 82 N. C., 404 ; *Bank* v. *Bynum*, 84 N. C., 24 ; and that the possession of an unindorsed negotiable note payable, to bearer,. raises the *presumption* that the person producing it on the trial is the real and rightful owner. *Jackson* v. *Love, supra,* and *Pate* v. *Brown*, 85 N. C., 166.

It is immaterial whether the action brought by the plaintiff is legal or equitable, for under the present system, the distinction in actions at law and suits in equity, and the forms of all such actions are abolished, and there is but one form of action. The Code, §133.

The complaint or counter-claim, which is in the nature of a cross action, must set forth the cause of action in a plain and concise statement of facts—The Code, §233, *Moore* v. *Hobbs*, 77 N. C., 65—and then the Court will give such relief as is consistent with the case made by the complaint and embraced within the issue. The Code, §425 ; *Knight* v. *Houghtalling*, 85 N. C., 17 ; *Oates* v. *Kendall*, 67 N. C., 241.

This action then, according to the statement of the facts set forth therein, may be either in the nature of detinue, or a bill in equity for the delivery of the bonds and mortgages, but as the defendant, as assignee by parol, has set up a counter-claim of the alleged *donatio causa mortis* of the bonds and mortgages, it pre-

sents the question, whether the transfer of an unindorsed bond, creating only an equitable title in the donee, is valid as a *donatio causa mortis*.

That the defendant's right of action, by his counter-claim, upon the unindorsed bond, is still an equitable claim notwithstanding—The Code, §133—see 1 Estee on Pleading, 122. In the case of *Overton* v. *Sawyer*, cited above, the learned Judge, in the conclusion of his opinion, uses the following language : " This conclusion is not at all opposed by the decision of Lord Hardwick in *Baily* v. *Snelgrove*, 3 Atkins Rep. 214, that a bond for the payment of money may be the subject of a *donatio causa mortis*. That was a case in Chancery, and it was held that the equitable interest in the bond passed to the donor, which does not militate at all with the position, that the personal representative of the donor, could *at law* recover the value of the bond in an action of trover." This is undoubtedly an authority for the doctrine, that a bond without endorsement, is the subject of a *donatio causa mortis* in equity.

And the principle is fully sustained by the authorities. When this principle was first applied to the transfer of personal property, it was limited to chattels, which might be delivered by the hand. But as trade and commerce advanced, it was gradually relaxed, and was extended, first, to embrace bank notes, then lottery tickets, and securities transferable by delivery, such as notes payable to bearer or to order, and indorsed in blank, and finally to bonds. *Snelgrove* v. *Bailey*, *supra*, was the first case, we believe, in which the doctrine was extended to bonds. There, the donor had delivered a bond to the donee, saying, " in case I die, it is yours, and then you have something."

The administrator of the donor, filed a bill in equity against the donee, to have the bond delivered up. Lord Hardwick, before whom the suit was heard, holding that the bond was the proper subject of a *donatio causa mortis*, dismissed the bill, and the same eminent jurist, afterwards, in the great case of *Ward* v. *Turner*, 2 Ves. Sr., 443, said he adhered to that decision, and in reference to this case, Chancellor Kent said : " The distinction

made by Lord Hardwick, between bonds and bills of exchange, promissory notes and other choses in action, seems now to be adopted in this country, and they are all considered proper subjects of valid *donatio causa mortis* as well as *inter vivos.*" 1 Kent, 379. All evidence of indebtedness which may be regarded as representing the debt, whether with or without indorsement, are the subject of a *donatio mortis causa.* Redfield on Wills, Part II, 312, 313, and to same effect *Brown* v. *Brown,* 18 Conn., 410; Williams on Executors, 692; Iredell on Executors, 52.

It was at one time matter of considerable discussion in the Courts of England, whether a mortgage given to secure the payment of a bond, was the subject of a *donatio causa mortis,* and in the case of *Duffind* v. *Elwes,* 1 Bligh. (N. S.), 497, it was decided, upon appeal to the House of Lords, from a decision of Vice Chancellor Leach, that the delivery of the mortgage, as creating a trust by operation of law, was good as a *donatio causa mortis.* The same principle was admitted in the case of *Hurst* v. *Beach,* 5 Madd., Ch. 351, and a delivery of a bond and mortgage as a *donatio causa mortis* held to be valid, and the same doctrine was held in *Duffield* v. *Elwes,* 1 Bligh. (N. S.); 3 Pomeroy's Eq. Jurisprudence, §1148.

The mortgage need not be assigned. The assignment of the debt, note or bond, secured by the mortgage, even without a formal transfer of the security, carries the mortgage with it. 1 Estee's Pleading, §345. These authorities establish beyond all question that the bonds and mortgages in controversy, are the proper subject of a *donatio causa mortis.*

But the plaintiff contended there was error in the instructions given by his Honor to the jury, that the defendant must prove the gift by a preponderance of evidence, otherwise he would not be entitled to a verdict. He insisted that it being an equitable action, the defendant must establish the gift by clear and unmistakable proof, and cited several authorities to sustain that equitable principle. But admitting the principle, it has no application to a case like this. The possession of the bond and mortga-

ges was *prima facie* evidence of ownership. The law raised the presumption from the fact of possession, and the *onus* was upon the plaintiff to rebut it. *Jackson* v. *Love, supra*, and the cases there cited.

The defendant further excepted to the instruction that the plaintiff, as administrator of James Kiff, was estopped to attack the gift as fraudulent. In this instruction there was error.

The plaintiff, to maintain his position, relied upon the case of *Burton* v. *Farinholt*, 86 N. C., 260, where it is held, First, that a voluntary transfer of a chose in action by an insolvent donor to his children, without valuable consideration, is fraudulent and void, and the same may be reached in equity by creditors, and subjected to the payment of their debts, and secondly that an administrator is estopped by the act of his intestate.

But there is a distinction to be observed between a voluntary assignment of personal property *inter vivos* in fraud of creditors, and a *donatio causa mortis*. The latter does not take effect until after the death of the assignor, and is ambulatory and conditional, and revokeable until his death, and is likened to a legacy, and in that respect partakes somewhat of the character of a testamentary disposition of the property, so far as it is liable for the intestate's debts, but it differs materially from a will, in that the donee's title is derived directly from the donor, and the assent of the representative of the donor is not necessary to support his title, yet at the same time, the executor or administrator of an alleged donor, has corresponding rights, and accordingly, upon a deficiency of assets to pay the lawful claims of creditors, any gift *causa mortis* must give way, so far as may be necessary to discharge lawful demands." Schouler on Executors and Administrators §219, and the same author in §220, lays it down, that " the executor or administrator, representing these and other interests, against the express or implied wishes of the deceased himself, if need be, may procure all assets suitable for discharging demands of this character. . But if any balance is left over, it goes, not to the next-of-kin, but to the donee, for the revoca-

tion of any gift for the benefit of creditors of the decedent, is only *pro tanto.*" *Schouler* on *Executors* and *Adm's* §220, and the cases there cited in support of the text,—see also *Pomeroy's Equity Jurisprudence*, §1152; *Iredell* on *Executors*, p. 556.

Those authorities, except the last, apply the doctrine as well to assignments *inter vivos* as to *donatio mortis causa.* This Court, however, has adopted a different principle as to contracts *inter vivos,* as in the case of *Burton* v. *Farinholt, supra.* But as its application to a *donatio causa mortis* is an open question in this State, we are at liberty to adopt the principles enunciated in *Schouler* as above, which we do, because it is consistent with justice and equity, and the spirit of our existing system of jurisprudence.

There is no allegation in the complaint that these bonds, &c., were necessary for the payment of debts. Whether that is an objection that might be taken on demurrer, we do not decide. There is no demurrer in the case, and the question of insolvency was one of the elements of the plaintiff's ownership and right to recover, and there was proof that the estate of plaintiff's intestate was insolvent.

Our conclusion is, that the plaintiff had the right to recover the bonds and mortgages in controversy, and after applying them to the satisfaction of the debts of the intestate, to pay over to the defendant any balance that may remain.

The judgment of the Superior Court is reversed, and this opinion must be certified to the Superior Court of Hertford county, that an account may be taken of the indebtedness of the estate of James Kiff, and the assets that have come, or ought to come, into the hands of the plaintiff as his administrator, applicable thereto, to the end that a final judgment may be rendered in the cause in conformity to this opinion.

Error.                                        Reversed.