Caylor *v.* Caylor's Estate.

---

## CAYLOR *v.* CAYLOR'S ESTATE.

[No. 2,585. Filed Jan. 6, 1899. Rehearing denied June 30, 1899.]

CONTRACTS.—*Husband and Wife.*—An agreement between a husband and his dying wife, the wife being childless, to the effect that the husband would turn over and deliver to her nephew all of her property and pay to such nephew, without diminution, a debt the husband owed his wife is without consideration, and cannot be enforced, since, under section 2651 Burns 1894, the husband, in the absence of a will, inherited the entire estate of his wife. *pp. 666-670.*

SAME.—*Complaint.—Decedents' Estates.*—A complaint in an action to enforce the promise of a husband made to his wife to turn over all of her property after her death to her nephew is insufficient, where it is not alleged that the wife's estate was solvent, or that it had been settled. *p. 670.*

GIFTS CAUSA MORTIS.—*Delivery.—Husband and Wife.—Complaint.*— A complaint alleged that a wife within an hour of her death called for her nephew; and, being informed that he was not present, told her husband that she then gave to her nephew all of her property, which was then in the husband's possession, and directed him to deliver same to the nephew, which he agreed to do. *Held,* that the facts pleaded show a gift *causa mortis,* and a sufficient delivery of the property. *pp. 670-677.*

From the Hamilton Circuit Court. *Reversed.*

*Roberts & Vestal,* for appellant.

*Robert Graham* and *Lamb & Hill,* for appellee.

WILEY, J.—Appellant filed a claim against decedent's

Caylor v. Caylor's Estate.

estate, which was passed to the issue docket for trial. The claim is in two paragraphs, to each of which a demurrer was sustained, and appellant refusing and failing to plead over, judgment was rendered against him for costs. Sustaining the demurrer to each of said paragraphs is assigned as error.

In the first paragraph it is alleged that appellant from his early childhood until he became of age resided in the family of the decedent, Caylor; that the family consisted of Mary Caylor, wife of said Daniel Caylor, and appellant; that said Mary was the second wife of said Daniel, and childless; that during her married life to decedent she loaned him a large sum of money; that she died intestate May 16, 1895, leaving said Daniel as her only heir; that at the time of her death said Daniel was indebted to her in the sum of $1,500; that at her death she owned divers promissory notes, the makers of which are unknown to appellant; that said notes aggregated at least $300; that she owned other personal property to the value of $200; that at the time of her death, said notes and personal property were in the possession of the said Daniel; that the said Mary was desirous that appellant should have all her estate at her death, and that, shortly before her death, for the purpose of bestowing her said estate upon him, entered into an agreement with said Daniel by which said Daniel agreed to and was to turn over and deliver to appellant, all and singular, her estate after her death, and account to appellant for all said money and property; that said agreement also provided that the real estate of which she died seized should go to appellant, the same to be taken in full payment of her account against said Daniel; that said Daniel failed to comply with said agreement, except as to the real estate, and converted all of said personal assets to his own use; that, in pursuance to said agreement, said Daniel conveyed all of said real estate to appellant; and, by reason of all of said facts, said estate is indebted to him, etc.

The second paragraph is like the first as to all material allegations, and differs from it only in this: In the second para-

graph it is averred that appellant was the nephew of the said Mary; that on May 16, 1895, she was stricken with disease, which soon developed into an alarming and fatal condition; that within an hour of her death, and believing that she was approaching dissolution, called for appellant, and, being informed that he was not present, she called for the said Daniel, and informed him that she believed she would not live to see appellant, and that she then gave appellant all her property, both real and personal; that, in pursuance to her said gift, she directed and enjoined upon said Daniel to deliver over and pay to appellant all and singular her property then in his possession; that said Daniel then and there accepted said trust, and agreed to perform the same in all respects; that said Daniel soon after died, without complying with the directions given him by said Mary; that the administrator of the estate of said Daniel took possession of all of said property, mingled it with the assets of the estate of said Daniel, and has failed and refused to account to appellant therefor. In this paragraph it is further alleged that the said Mary died leaving no debts, and that there are no debts against her estate. It is further charged that appellant remained in ignorance of said gift to him until after the death of said Daniel; that he made a demand upon the administrator of his estate to comply with said trust, but that he refused to do so. It is also charged that the said Mary never afterwards made any other or further disposition of her property.

Appellant argues that the first paragraph of the complaint rests upon the alleged agreement of Daniel Caylor with his deceased wife to turn over and deliver all of the property of which she died seized, both real and personal, to him; and that the second paragraph of complaint rests upon a gift *causa mortis.* We may properly adopt the theory of the complaint contended for by appellant, for the rule prevails in this State that a plaintiff must recover *secundum allegata et probata,* or not at all.

Appellee claims that the first paragraph of the complaint is insufficient because there was no consideration on the part of Daniel Caylor to support the agreement. There seems to be some merit in this claim, and we will consider it. Daniel Caylor was the husband of Mary. Their marriage was fruitless in children. By the averments of the complaint, the said Mary was without heirs, other than her husband. It follows, therefore, that at her death, in the absence of a will, or other legal disposition of her property, the said Daniel would inherit her entire estate. Section 2651 Burns 1894, section 2490 Horner 1897. It also appears from the complaint that Daniel was indebted to Mary in the sum of $1,500 for money loaned to him. While this amount, during her life, was a claim against him, which she might have enforced, yet, at her death said indebtedness would have become liquidated and canceled, for it was a part of her estate, and he was entitled to the whole estate; otherwise, it would have been a debt against himself, and this could not exist. So we find from the complaint that Daniel not only agreed to turn over and deliver to appellant upon the death of Mary all of her estate, but also promised to pay to appellant the $1,500 which he had borrowed of her, which, by her death, he would not be otherwise bound to pay. By this agreement he relinquished all of his right, title, and interest in the estate of his wife, and promised to deliver it all to appellant.

In all contracts and agreements, there must be some consideration to support them. A contract without any consideration is a *nudum pactum.* From the allegations of the first paragraph of the complaint we are unable to discover any consideration moving to Daniel for the agreement. Daniel was given nothing by his wife, by the averments of the complaint, which can be construed into a consideration for his promise to pay to appellant the $1,500, or to turn over to him all of her property. There was to be no diminution of the amount her husband owed her, as any consideration for his

promise to pay $1,500 to appellant, but, under the averments of the first paragraph, the entire amount was to be paid. At the death of his wife, the debt owing to her by Daniel would have been abrogated or canceled, because he was her sole surviving heir, and the amount would have become his own by inheritance, subject only to debts against her estate. Also, under the first paragraph, Daniel, as the husband of Mary, was given nothing which could be construed into a consideration for his promise to pay appellant $1,500, or to turn over to him the entire estate of the said Mary. To enforce this alleged agreement would be to hold that the said Daniel abandoned every right he had in the estate of his deceased wife, and that too without any consideration moving to him for the performance of the agreement on his part. There is a further objection to this paragraph. It is not charged that the estate of Mary was solvent; that there were no just claims against it, or that it had been settled. Her estate was subject to the payment of all of her debts, and she could not dispose of her property in derogation of the rights of her creditors. A pleading will be construed most strongly against the pleader. The court correctly sustained the demurrer to this paragraph of complaint.

We will next consider the sufficiency of the second paragraph of the complaint. As we have seen, the theory of this paragraph is that the facts constitute a gift *causa mortis.* We will enter upon the discussion of this question with the fact in view that gifts *causa mortis* are not favored in law. In 3 Wait's Actions and Defenses, 502, it is said: "Gifts *causa mortis* are not favored in law. They are said to be a fruitful source of litigation, often bitter, protracted, and expensive. They lack all those formalities and safe-guards which the law throws around wills, and create a strong temptation to the commission of fraud and perjury. * * * To constitute a valid gift *causa mortis,* three things are requisite: 1. It must be made with a view of the donor's death from present illness or from external or apprehended

peril. 2. The donor must die of that ailment or peril. 3. There must be a delivery." See, also, *Grymes* v. *Hone*, 49 N. Y. 17; *Emery* v. *Clough*, 63 N. H. 552, 4 Atl. 796; *Kiff* v. *Weaver*, 94 N. C. 274; *Smith* v. *Ferguson*, 90 Ind. 229; *Parcher* v. *Savings Institution*, 78 Me. 470, 7 Atl. 266; *Taylor* v. *Bruscup*, 48 Md. 550; *Dickeschied* v. *Bank*, 28 W. Va. 340. In Vol. 8, (1st ed.) Am. & Eng. Ency. of Law, p. 1342, in note 1, it is said: "Such transfers of property are not, as a rule favored by the courts, for the reason that they are open to the objections of uncertainty, which the law seeks to avoid, in reference to wills, by its strict provisions and precautions as to their execution and proof. Great strictness and clear proof are therefore required to establish such gifts, and they can only be upheld when the intention of the donor is clear and definite, and such intent is fully carried out by execution." See, Parsons on Contracts, (6th ed.) 2237; *Gano* v. *Fisk*, 43 Ohio St. 462, 3 N. E. 532; *Hatch* v. *Atkinson*, 56 Me. 324; *Marshall* v. *Berry*, 13 Allen (Mass.) 43, note. In Vol. 8, *supra*, at page 1348, under note 1, it is said: "Gifts *causa mortis* have the nature of a legacy, and the policy of our law does not favor them while there is provision, by the statute of wills and the law of descents, for the transmission of all property rights." Under the facts pleaded in this paragraph of complaint, it is sufficiently clear that at least two of the prerequisites necessary to constitute a gift *causa mortis* were present: (1) Impending death from present ailment, and (2) that the donor died of that ailment. The controlling and difficult question, to our minds, is the third prerequisite, and our conclusion must rest upon whether or not the facts constitute or show a valid delivery of the property donated. It is the recognized law, in all cases of this character, that, to complete a gift and make it valid, there must be a delivery of the property given. It sufficiently appears that there was no delivery directly to the donee, for it is shown that he was not present when the gift was made. But the weight of modern author-

ity holds that delivery to a third person, for the benefit of the donee, is sufficient, where there is an actual change of possession, and, although the donor dies before the third person delivers the property to the donee, the gift may be enforced. *Michener* v. *Dale*, 23 Pa. St. 59; *Jones* v. *Deyer*, 16 Ala. 221; *Dresser* v. *Dresser*, 46 Me. 48; *Dole* v. *Lincoln*, 31 Me. 422; *Sessions* v. *Moseley*, 4 Cush. (Mass.) 87; *Conner* v. *Root*, 11 Colo. 183, 17 Pac. 773; *Borneman* v. *Sidlinger*, 15 Me. 429. The most recent and exhaustive discussion of the question we are now considering we find in *Devol* v. *Dye*, 123 Ind. 321, 7 L. R. A. 439. From the special findings in that case, it appears that one William J. Devol died intestate, leaving a large estate, and leaving one brother and the descendants of three deceased brothers as his only heirs. He had been in ill health for a long time prior to his death. He was president of a bank, and kept a tin box in the vault, in which he kept money and other valuables. The drawer in which he kept the box, and the box itself, was kept locked, and no one had access to it but himself. He went south for his health, and, before going he entrusted his key to this box and private drawer to the cashier of the bank, and these remained in the custody of the cashier until after the testator's death. Soon after his return from the south, he sent for Mr. Lane, the cashier, and declared to him that it had always been his purpose to give to one Pressley G. Dye, his cousin, $5,000, either in cash or bank stock; that he had put $2,000 in gold, in a sack, and marked the name "Dye" upon it, and left it in the tin box. He then directed the cashier to go to the bank and count out $3,000 more in gold coin and put it in a sack and mark it as the other was marked; and that he should also count out $1,000 in currency, and place it in an envelope for a Mrs. Nickerson, and put her name upon it. He then directed the cashier, in case of his death, that the sacks and packages should be delivered to the parties indicated by the writing thereon. These directions were carried out by the cashier, who retained the

keys to the box and drawer; and the testator died in two or three days after he gave the directions just specified. The Supreme Court, by Mitchell, C. J., said: "A gift *causa mortis* is consummated when a person in peril of death, and under the apprehension of approaching dissolution from an existing disorder, delivers, or causes to be delivered, to another, or affords the other the means of obtaining possession of any personal goods for his own use, upon the express or implied condition that in case the donor shall be delivered from the peril of death the gift shall be defeated. * * * The concurrence of three things is essential to the consummation of a gift *causa mortis:* (1) The thing given must have been of the personal goods of the donor. (2) It must have been given while the latter was in peril of death, or while he was under the apprehension of impending dissolution from an existing malady; and (3) the possession of the thing given must have been actually, or constructively, delivered to the donee, or to some one for his use, with the intention that the title should then vest conditionally upon the death of the donor, leaving sufficient assets in addition to pay his debts. A mere unexecuted purpose, however clearly or forcibly expressed, so long as it rests merely in intention, is not effectual. The intention must not only have been manifested, but, in addition, in order to consummate the gift, the donor must have transferred the possession of the thing to the donee in person, or to some other for his use, under such circumstances as that the person to whom delivery is made is thenceforth affected with a trust or duty in the donee's behalf." Citing *Smith* v. *Ferguson*, 90 Ind. 229, 21 Am. Law. Rev. 732, 19 C. L. J. 222; *Walsh's Appeal*, 122 Pa. St. 177, 15 Atl. 470, 1 L. R. A. 535. Continuing, the learned judge said: "It is well settled, however, that the delivery need not be made to the donee personally, but may be made to another as his agent or trustee. A delivery thus made is as effectual as though it had been made directly to the donee.

Thus, in *Milroy* v. *Lord*, 4 DeGex F. & J. 264, Lord Chief Justice Turner said: 'I take the law of this court to be well settled, that, in order to render a voluntary settlement valid and effectual, the settlor must have done everything which, according to the nature of the property comprised in the settlement, was necessary to be done in order to transfer the property and render the settlement binding upon him. He may of course do this by transferring the property to the persons for whom he intends to provide, and the provision will then be effectual, and it will be equally effectual if he transfers the property to a trustee for the purpose of the settlement, or declares that he himself holds it in trust for those purposes; and if the property be personal, the trust may, as I apprehend, be declared either in writing or by parol'."

In the case from which we have just been quoting it was held that as it appeared from the facts found that it was clearly the intention of the donor to make the gifts indicated, that he had relinquished the keys to his private drawer and tin box to the cashier of the bank, thereby effectually surrendering, so far as could be, all dominion over the property, and affording to the donees the means of obtaining possession of it; that it was a valid gift *causa mortis*, and should be upheld. The learned Chief Justice, in concluding his discussion, said: "Without pausing to review the authorities, it is sufficient to say that where property is delivered to a third person for the use of another, as a gift *causa mortis*, and its delivery is accompanied by a written declaration clearly indicating that it is delivered for the use, or upon a trust for an intended donee, or where a death-bed delivery is made in the presence of witnesses, who are disinterested and called for the purpose, the intention of the donor should not be permitted to fail by a narrow and illiberal construction, in case a delivery corresponding with the condition of the donor and the situation of the property was actually made." *Williams* v. *Guile*, 117 N. Y. 343, 22 N. E. 1071, 6 L. R. A. 366; 2

Schouler Per. Prop., section 179; *Ellis* v. *Secor*, 31 Mich. 185.

In *Wyble* v. *McPheters*, 52 Ind. 393, Andrew A. McPheters delivered to Wm. McPheters some money and bonds, with direction to deliver the same to appellants and one Allie upon the death of the said Andrew. The court, by Worden, J., said: "It is claimed by the appellees that each paragraph of the complaint was bad, because there was no complete delivery of the money and bonds, and, therefore, the gift cannot be sustained as a gift *inter vivos*, or *causa mortis*. We, however, are of a different opinion. It appears in the first paragraph that the money and bonds were, in the lifetime of Andrew A. McPheters, by him delivered to the defendant William M. McPheters, with directions to deliver the same to the plaintiffs and said Allie, deceased, upon the death of him, the said Andrew A., and that said William M. received the same and agreed to execute the trust reposed in him. There was a sufficient delivery to constitute a valid gift *inter vivos*. The delivery to William M. McPheters was absolute, unconditional. The subject of the gift was to be unconditionally delivered by him to the plaintiffs (and said Allie) upon the death of Andrew A., an event which at some time must have taken place. The latter delivery was to depend upon no condition; the time thereof only was uncertain. The second paragraph was equally good. The transaction created the relation of trustee and beneficiaries between William M. McPheters and the plaintiffs. See *Miller* v. *Billingsly*, 41 Ind. 489. A delivery to a trustee for the use of the party to be benefited is as effectual as a delivery to the party himself," etc.

Under the authorities, the second paragraph of the complaint was good as against a demurrer for want of facts. The transaction between Mary and Daniel Caylor relative to the disposition of her property created a trust, with the latter as trustee, and appellant as the *cestui que trust*. The facts

pleaded show a gift *causa mortis.* It is evident from the facts that it was the intention of Mary to bestow her entire estate upon appellant. He was the object of her bounty, and was to be the recipient of her generosity. While, it is true, the notes and personal property described in the complaint were at the time of the gift in the possession of Daniel, and no change of possession was made, yet, we can not see that this fact vitiates the gift. It would, it seems to us, have been an idle and useless ceremony at the time of the gift for Daniel to have delivered to Mary the possession of the property bestowed, and she in turn to have immediately re-delivered the same to him for the use and benefit of appellant. The law does not deal in trifles, nor require the doing of unnecessary things. Suppose the gift had been made to Daniel himself, it certainly could not be contended with any show of reason, that, to constitute a delivery to him, while the property was in his possession, it would have been necessary for him to have turned it over to Mary, and for her to then have made a manual delivery to him. *Tenbrook* v. *Brown,* 17 Ind. 410, seems to be decisive of the question we are discussing. There appellee claimed certain property as having been given to him by his father, and, at and before the time of the gift, the property was in the possession of the donee. The court said: "Now, it seems clear enough that if the property in question was in the possession of the defendant, as agent or manager for his father, at the time of the gift, still, his father might execute to him a valid gift of the property while thus in his possession. The law clearly would not require, in such case, that he should first surrender his actual possession to his father, in order that his father might re-deliver the property to him in the execution of the gift. It would seem that in such case the gift would be complete if the father bestowed the property upon the defendant and relinquished all dominion and control over it, and recognized the defendant's possession thereof as being in his own right," etc. Here Mary Caylor relinquished all dominion

and control over the property, and entrusted it to Daniel Caylor to be by him delivered to appellant. While every case must be brought within the general rule that to constitute a valid gift *causa mortis* there must be a delivery of the property or the thing given to the donee, or to a third person for his use and benefit, yet, as the circumstances under which such gifts are made must of necessity be varied and infinite, the courts must determine each case upon its own peculiar facts and circumstances. *Devol* v. *Dye*, 123 Ind. 321; *Dickeschied* v. *Bank*, 28 W. Va. 340; *Kiff* v. *Weaver*, 94 N. C. 274.

In the case before us every essential element to a valid gift *causa mortis* is present, from the averments of the second paragraph of complaint, and our conclusion is that the facts pleaded show such a gift. In reaching this conclusion, we do not wish to be understood as holding that there was a valid gift of the real estate described, for, as we have seen, gifts of this character apply only to personal property, and title to real estate cannot thus pass. But, as Daniel Caylor has conveyed the real estate to appellant, that question is eliminated from the case, and can have no weight in its decision. The second paragraph of the complaint being sufficient, it was error to sustain the demurrer. The judgment is reversed, and the court below is directed to overrule the demurrer to the second paragraph of complaint.