M. A. CRILLY, Administrator for the estate of Byron Gardner, Deceased, Plaintiff,

v.

Erma Gardner DETTER, a/k/a Mrs. C. V. Detter, Defendant.

Civ. No. 753.

United States District Court D. Kansas.

July 5, 1956.

McClellan, Michaud & Robbins, Wichita, Kan., for plaintiff.

Foulston, Siefkin, Schoeppel, Bartlett & Powers, Wichita, Kan., for defendant.

WALLACE, District Judge.

This action was instituted by M. A. Crilly, administrator of the estate of Byron Gardner, deceased, and, is now being prosecuted by the Rapid City Trust Company, a corporation, administrator de bonis non. The defendant, Mrs. C. V. (Erma Gardner) Detter is a sister of the deceased. In substance the com-

plaint alleges, that on or about April 14, 1947, the defendant took into her possession United States Government Bearer Bonds of a face value of $11,000, property of the estate of Byron Gardner, deceased, and agreed to hold such bonds as a trustee and to make proper accounting to the heirs of Byron Gardner, deceased; that since such time the defendant has delivered bonds of a face value of $5,500 to the administrator but has failed and refused to deliver to the administrator the balance of such bonds. Plaintiff asks for possession of such undelivered bonds, together with any interest already received thereon by the defendant. In answering the defendant urges that the sued for bonds are her separate property, and not property of the decedent's estate; and, alternatively asserts defenses of limitations and failure of the real parties in interest, the heirs, to prosecute this suit.

This case was tried to the court, without a jury, and, thereafter taken under advisement.

Basically, the question is whether or not the decedent (hereinafter referred to as "Byron") effectuated a valid gift of the controverted bonds to his sister, the defendant.

The court is of the opinion that the clear preponderance of the evidence indicates that Byron did *intend* to give the instant bonds to the defendant. Therefore, the vital query remaining is whether such donative intent was sufficiently carried out by Byron to bring about a valid inter vivos or causa mortis gift.

The evidence establishes that the defendant and her brother, Byron, were extremely fond of each other; and, By-

ron, having been divorced some twenty years prior to his death, had at various times lived with the defendant and her husband.[1] When Byron became ill at the time of his last sickness, he was hospitalized in Omaha, Nebraska, and the defendant went to Omaha to visit with and care for him. Some two weeks before his death Byron told the defendant that he had deposited enough money with the hospital to pay his bill, and that he wanted her to have $2,500 in bonds which he had with him at the hospital which he then took from his grip and gave her.[2] Several days later, about ten days before his death, Byron told the defendant that he had an additional $11,000 in coupon bonds in a safe deposit box at Rapid City, South Dakota, which he also wanted her to have. However, he went on to remark that he thought his former wife, Fanny, should share in some of the $11,000.00; and, he told the defendant to give Fanny that amount which seemed fair.[3] On the day before his death, in the presence of his nephew, Clayton Simmons, the defendant and her husband, Byron told Clayton that he wanted the defendant to have the $11,000 worth of bonds located in the joint box of Byron and Clayton at Rapid City; and, he directed his nephew to take the bonds from the box and give them to the defendant. Clayton promised so to do.[4] Immediately after the funeral, the defendant, her husband and Clayton went to Rapid City and Clayton took the $11,000 in bonds from the box and turned them over to the defendant. Two days later, after conferring with his attorney, Clayton had the defendant sign a prepared receipt for the bonds.[5] Although not legal-

1. These stays included one by Byron for recuperation from a rather serious illness occurring several years prior to Byron's last illness.

2. The evidence was conclusive that a valid inter vivos gift as to the $2,500 took place and the court has previously ruled in defendant's favor on the second cause of action urged in the complaint.

3. According to the defendant's testimony she attempted to get Byron to specifically

designate how much should go to Fanny but he refused to so indicate, leaving the amount up to the defendant.

4. At this same time, Byron mentioned that a certain attorney in Rapid City had a key to the safe deposit box.

5. This receipt provided: "To Whom It May Concern: Receipt is hereby acknowledged of $11,000.00 worth of Government Bonds on which there is no name, and which were taken from safety

ly obligated to do so, the defendant, and her husband paid the remainder of Byron's hospital bill and all of his funeral expenses, including bringing Byron's body to Wichita for burial, totaling some $1,360. Subsequently, after considerable correspondence, the defendant voluntarily turned over to the administrator $5,500 to be paid to Byron's former wife, Fanny, in full settlement of any claims against the estate. Thereafter, the defendant indicated through her attorney a willingness to turn the remaining $5,500 over to the administrator but ultimately refused so to do and urged that such amount was her own personal property through gift.

The court is of the opinion that when Byron instructed his nephew to give the controverted bonds to the defendant, at a time when the bonds were in the possession of the nephew, that such instruction effected a legally recognizable inter vivos gift. However, in any event, if such did not result in an inter vivos gift, then under the facts of this case it must be held that an enforceable gift causa mortis occurred.[6] The remark by Byron that a certain attorney had a

key to the box is in no way material to the question of delivery, inasmuch as the nephew was a joint tenant in the box and independently had access thereto. In judging whether requisite delivery has taken place, in either type of gift, the special facts and circumstances surrounding each case are controlling inasmuch as the basic requirement of delivery was initiated into the law so that the intent of the alleged donor would be measurable by some objective standard thereby guarding against specious claims of gift. However, it is recognized that where the personalty is already in the possession of the donee no added evidence of delivery need be present; and, where the property is in the possession of a third person there need be no manual delivery by the donor to the donee.[7] In the instant case, the evidence points to a present intent on the part of the decedent to give the defendant the bonds, coupled with a taking of all reasonable steps available to consummate such gift.[8] Although Clayton was not in the exclusive possession of the instant bonds, but merely jointly possessed them, he did have sufficient possession

---

deposit box belonging jointly to Byron Gardner and Clayton L. Simmons by Clayton L. Simmons and given to me for keeping. In accepting these bonds I assume all responsibility for same, and shall make proper accounting to the heirs of said Byron Gardner. Signed this 17th day of April, 1947. Mrs. C. V. Detter."

6. "In order to constitute a valid gift *inter vivos* of personal property delivered by a donor to a third person, with instructions to deliver it to the donee at the death of the donor, there must be an immediate transfer of the title, and the donor must relinquish all present and future right, possession, dominion, or control over the property given." 3 A.L.R. p. 903. "The concurrence of three things is essential to the consummation of a gift *causa mortis:* (1) The thing given must have been of the personal goods of the donor; (2) It must have been given while the latter was in peril of death, or while he was under the apprehension of impending dissolution from an existing malady; and, (3) The possession of the thing given must have been actually, or constructively, delivered to the donee, or to

someone for his use, with the intention that the title should then vest conditionally on the death of the donor, leaving sufficient assets in addition to pay his debts." 3 A.L.R. 916.

7. In re Gorden's Will, 1947, 238 Iowa 580, 27 N.W.2d 900; Payne v. Tobacco Trading Corporation, 1942, 179 Va. 156, 18 S.E.2d 281.

8. As mentioned in Stevenson v. Hunter, 1930, 131 Kan. 750, 293 P. 500, 502: "Appellants urge that there was no delivery because the deceased retained the key to the lock box and had access to the stock until her last illness and could have changed the assignment at her pleasure, and that the transfer she had made was therefore not irrevocably beyond her control. *This is all very logical, but no one can carefully read the evidence in this case without being thoroughly convinced that gifts were not only intended by the deceased but that she had actually made them and had done everything she could reasonably have done to effect a complete delivery.*" (Emphasis added.)

to carry out Byron's wishes; and, the instructions given by Byron did not amount to the mere designation of an agent to bring about a future gift and delivery, but constituted a completed gift with Clayton, the nephew, assuming the position of trustee to see to it that the object of the donation was received by the donee. Alternatively, if we find that it was implicit in the instructions in question that the bonds were only to be actually handed to the defendant upon the death of Byron (and only in the event he died) an enforceable causa mortis gift existed, inasmuch as Byron did all he could to see to it that the gift was effectuated, appointing a third person in possession as trustee to carry out his wishes, and not revoking such gift prior to his death.[9] In Tyrrell v. Judson,[10] the Nebraska Supreme Court held there was sufficient delivery to support a causa mortis gift where the decedent obtained a joint safe deposit box and placed bonds therein at the time expressing the desire to the bank officials that her intent was to give the joint tenant the bonds should anything happen to her. If a valid gift causa mortis can thus be made to the joint tenant of the box, it seems irrefutable that likewise a joint tenant can be designated a trustee to hand over the bonds to a third person donee.

Although the plaintiff makes much of the fact that the primary evidence relied upon by the defendant is her own self-serving testimony, the court believes that defendant's testimony is completely worthy of belief. This is particularly true in view of the corroborating action of Clayton in immediately turning the bonds over to the defendant, which act later proved to be against Clayton's own personal interest when after further reflection and consultation with his attorney he asserted a personal claim of ownership in the controverted bonds. If a gift to defendant did not take place, as related by the defendant, there is no rational explanation why Clayton, just after the death of his uncle, went to Rapid City and handed the bonds over to the defendant.

Much is made of the "receipt" signed by the defendant which contains language indicating that the defendant took the bonds in trust;[11] and, plaintiff urges that the defendant was given these bonds as an unofficial administratrix and was duty bound to use them for the benefit of the various heirs. However, this stand holds no appeal to this court. The "receipt" was prepared by Clayton's lawyer after the bonds had already been turned over to the defendant and it was unhesitatingly signed by the defendant; and, there was no thought on her part of disclaiming any interest in the bonds but merely a desire to do the right thing by Clayton, assuming all responsibility for possessing the bonds.

Admittedly, the correspondence written by the defendant's former lawyer is susceptible of the construction that the defendant was acting as a trustee of the instant bonds rather than asserting an outright claim of ownership as a donee.[12] However, the effect of this cor-

---

9. In Caylor v. Caylor's Estate, 1899, 22 Ind.App. 666, 52 N.E. 465 a wife, on her deathbed, called for her nephew, and, being told he was not present, informed her husband that she gave the nephew all her property, and directed him to deliver the nephew all her property, which he agreed to do. Although there was no manual delivery of the property, inasmuch as it was already in the possession of the husband, a valid gift causa mortis was held to have occurred.

10. 1924, 112 Neb. 393, 199 N.W. 714.

11. Read fn. 5, supra.

12. The following are some excerpts from correspondence written by the defendant's former attorney to the administrator's counsel: (1) "You will find enclosed a check for $5,500.00 signed by Mrs. Detter, the same representing a payment of the $11,000.00 which she owes the estate, or someone else. * * * Mrs. Detter wants to have or be protected from the claims of Clayton Simmons some way. She is perfectly willing to send the balance of the $11,000.00 taken from the safety deposit box according to instruction of Byron Gardner. Therefore, I think she should have some kind of a statement from Simmons whereby he consents to Mrs. Detter paying this

respondence does not countervail the presently claimed gift when considered in context with all the evidence in this case. The defendant made a continued effort to do the proper thing; and, her constant willingness to do that which she understood was required under the law does not impeach her present position but lends credibility thereto. The defendant promised her brother to look after his former wife; and, without being legally compelled to so do she turned over $5,500, exactly one-half of the gift in question to the administrator to be given to Byron's former wife. Moreover, apparently when the defendant received information that she was not legally entitled to retain the remainder of the money as a gift, she was willing to do that which was required, if protected. Later the defendant chose to stand on her claim of gift.[13] Although the defendant's conduct does not evidence that precise consistency which one, acquainted with the requirements of the law, would carefully follow, nonetheless her actions, judged by normal human behavior, have been completely compatible with her presently asserted claim.

In view of the court's opinion on the merits of this case the defenses of limitations and real party in interest will not be discussed.

The defendant is entitled to judgment. Within twenty days counsel should submit a journal entry which conforms with this opinion.

money into the estate * * * Not that she doesn't want to turn the money over, but she does not want to get into trouble by so doing." (Letter of January 15, 1948). (2) "As suggested in my former letter, all that Mrs. Detter is interested in is that she can be assured that when she pays the $11,000.00 into the estate she would be relieved of further liability or claim for anyone, thus avoiding any further trouble or expense to her, so I think after you decide what to do, a letter from Clayton Simmons saying that the $11,000.00 should be paid into the estate and distributed, according to law, would be proper." (Letter of February 2, 1948). (3) " * * * Mrs. Detter is agreeable to the thoughts expressed in your letter and will sign the stipulation when the difficulty with Clayton Simmons is adjusted to your satisfaction * * * It is my idea that if

and when you get an adjustment with Clayton in conformity to our thoughts in this letter and prior communications, we will be ready to close and when this is done, notify me and the stipulation from Mrs. Detter with the $5500 will be enclosed." (Letter of June 6, 1950)

13. It is apparent that plaintiff, an elderly woman, was relying upon the advice of others in an effort to do the right thing; and, in light of the closeness of the legal question involved herein doubtless she was initially advised in the best of good faith that she should turn the bonds over to the administrator. However, whether under the law a valid gift was consummated cannot be judged by what she was willing to do in reliance upon the advice of others, subsequent to the controverted transaction, but whether prior to such time a gift in fact took place.