In the Matter of the Accounting of FRANK R. SHERMAN, as Temporary Administrator of the Estate of WILLIAM S. DEYOE, Deceased, Appellant.

MAUDE VANDENBURGH, as Administratrix with the Will Annexed of WILLIAM S. DEYOE, Deceased, Respondent.

Evidence — decedent's estate — claim based upon an oral contract or promise of decedent — corroboration of testimony of claimant — when corroboration not required as matter of law.

In an action upon a claim based upon an oral promise or contract of a decedent, or in support of such a claim disputed by an executor ór administrator, the claimant is not required to prove his case by more than a preponderance of evidence. Where the evidence in support of such a claim consists of the testimony of the claimant, such testimony is not required as a matter of law to be corroborated by other evidence in order to make out a gift, although it does call for a very careful scrutiny and examination of the facts, and where a surrogate, after ruling that the testimony of a claimant, upon a claim against a decedent made by the administrator of decedent's estate, although true, required corroboration as matter of law, and for that reason denied the claim, the decision of the Appellate Division affirming the surrogate's decree, although unanimous, must be reversed because based upon insufficient and improper findings. (*Ward* v. *New York Life Ins. Co.*, 225 N. Y. 314, followed.)

*Matter of Sherman*, 173 App. Div. 988, reversed.

(Argued November 19, 1919; decided December 9, 1919.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 8, 1916, which affirmed a decree of the Saratoga⸜ County Surrogate's Court, settling and surcharging the

accounts of the temporary administrator of the estate of William S. Deyo, deceased.

The facts, so far as material, are stated in the opinion.

*Edgar T. Brackett* for appellant. Sherman's evidence being given, there being nothing inherently improbable about it, and it being wholly uncontradicted and believed by the surrogate, who has expressly found that he told the truth, the surrogate was in error in holding that, because not corroborated, the appellant's claim was not established. (*McKeon* v. *Van Slyck*, 223 N. Y. 392; *Ward* v. *N. Y. Life Ins. Co.*, 225 N. Y. 314; *Lewis* v. *Merritt*, 113 N. Y. 386.)

*J. H. Barker* for respondent. Public policy requires that claims of personal representatives against decedents' estates must be carefully scrutinized and should be established by very satisfactory evidence. (*Matter of Marcellus*, 165 N. Y. 70; *Matter of Van Slooten* v. *Wheeler*, 140 N. Y. 624; *Matter of Arkenburgh*, 58 App. Div. 583; *Matter of Furniss*, 86 App. Div. 96; *Rosseau* v. *Rouss*, 180 N. Y. 116; *Hamlin* v. *Stevens*, 177 N. Y. 39; *Ide* v. *Brown*, 178 N. Y. 26; *Holt* v. *Tuite*, 188 N. Y. 17; *Matter of Schwartz*, 87 Misc. Rep. 559; *Williams* v. *Purdy*, 6 Paige, 166.) A proper application of the rule requires that the testimony of the claimant be corroborated by the testimony of disinterested witnesses. (*Ide* v. *Brown*, 178 N. Y. 26; *Hamlin* v. *Stevens*, 177 N. Y. 39; *Rosseau* v. *Rouss*, 180 N. Y. 116; *Kenney* v. *Public Administrator*, 2 Bradf. 319; *Matter of Manhardt*, 17 App. Div. 1; *Matter of Schroeder*, 113 App. Div. 204; *Snook* v. *Sullivan*, 53 App. Div. 602; 167 N. Y. 536.)

CRANE, J. On March 25th, 1914, William S. Deyoe, a resident of the town of Northumberland, Saratoga county, died leaving a last will and testament in which the appellant, Frank R. Sherman, was named as sole executor. Probate being contested, the appellant on the 31st day of March was granted letters of temporary

administration.   After the will was admitted to probate
Frank R. Sherman renounced the executorship and letters
of administration with the will annexed were issued to
Maude Van Denburgh, the respondent herein, who duly
qualified and has since been acting in that capacity.

On August 20th, 1914, the appellant filed his petition
and account as such temporary administrator.   He failed
to include therein three bonds of the American Wood
Board Company.   Objections to this omission having
been filed, the surrogate after a hearing surcharged the
appellant with the sum of $3,297, the value of the bonds
with interest thereon from March 1st, 1914.   The
appellant claimed that these bonds were a gift to him
by the deceased shortly before his death.   The surrogate
made the following findings of fact:

" 12.  That on the said trial in this accounting the
contestant called the said Sherman as a witness and said
Sherman testified that just before leaving for said hospital
said Deyoe delivered to said Sherman said three coupon
bonds, and at the same time said to Sherman that one
of the bonds was his; that said Sherman thereupon
placed all said bonds in his own safe, and none of the
same were ever redelivered to said Deyoe; Sherman
further testified that afterwards at the hospital, said
Deyoe told said Sherman that all the said bonds were
Sherman's to do with as he pleased; and that after-
wards said Sherman sold said bonds as his own.

" 13.  That said Sherman testified truly in relation to
said matter, but was not sufficiently corroborated by
other evidence to establish his claim to said bonds."

In his opinion the surrogate said:

" While I fully believe that Mr. Sherman told the
exact truth, I feel constrained to hold as matter of law
upon the authority of the foregoing cases that the evidence
is insufficient to establish a gift of the bonds to him."

The cases referred to were *Hamlin* v. *Stevens* (177 N. Y.
39) and *Rosseau* v. *Rouss* (180 N. Y. 116).   At the time

of this decision by the surrogate he had not before him our decision in the case of *McKeon* v. *Van Slyck* (223 N. Y. 392, 397) as it was not decided until May of 1918. There we stated as follows:

" In civil cases a plaintiff is never required to prove his case by more than a preponderance of evidence. This is as true of actions against an executor, founded on claims put forward for the first time after the death of the testator, as it is of other actions. (*Lewis* v. *Merritt*, 113 N. Y. 386.) No doubt in determining whether the preponderance exists, the triers of the facts must not forget that death has sealed the lips of the alleged promisor. They may reject evidence in such circumstances which might satisfy them if the promisor were living. They must cast in the balance the evidence offered upon the one side and the opportunities for disproof upon the other. They may, therefore, be properly instructed that to make out a preponderance, the evidence should be clear and convincing. (*Roberge* v. *Bonner*, 185 N. Y. 265.) But all these instructions in last analysis are mere counsels of caution. The responsibility of determining whether the evidence is clear and convincing must ultimately rest upon the jury, subject, of course, to the power of the court to set aside their verdict. There is no rule of law that the claimant's contract must be in writing, or even that it must be made out in all substantial particulars by disinterested witnesses."

After explaining the decision of *Hamlin* v. *Stevens*, the opinion further states:

" In the instant case the jury might properly have been instructed that they could reject the testimony though uncontradicted unless they found it clear and convincing. They might even have been instructed that they could in their discretion reject it if it was not corroborated in all substantial particulars by disinterested witnesses. But they could not properly be instructed that such

23

corroboration was essential as a matter of law, or that the law, irrespective of the circumstances, viewed the claim with suspicion." (p. 398.)

The learned surrogate was, therefore, in error when he ruled in this case that the testimony of the appellant although true required corroboration as a matter of law. This matter having been set forth and the attitude of the surrogate fully stated in his findings of fact, the unanimous affirmance by the Appellate Division does not preclude us from reversing a judgment which those findings do not support or justify. In other words, the judgment is based upon insufficient and improper findings.

While the testimony of the appellant was not required as a matter of law to be corroborated by other evidence in order to make out a gift yet it did call for a very careful scrutiny and examination in accordance with the suggestions made in *Ward* v. *N. Y. Life Ins. Co.* (225 N. Y. 314, 322). It was there said:

" The rule in any civil case is that the plaintiff must establish his claim by a fair preponderance of evidence. He need do no more than this if his claim deals with a dead person; he cannot do less if he is attacking the rights and property of a living person. The general rule as to weight and quality of evidence is no different in one case than in the other. In applying the rule and test to specific evidence, however, it very likely will and should occur that the triers of fact will more carefully and critically scrutinize evidence offered against a dead person's estate for the purpose of deciding whether it does make the necessary weight and preponderance of evidence, than would be done if the testimony was offered against one who was alive to contradict it."

If upon a rehearing of this case the evidence of the appellant is admitted it should be treated in the light of these suggestions by the surrogate in determining whether or not a gift has been established.

Without of course designing to review the findings made

by the surrogate, we may refer to the evidence for the purpose of illustration of what we have said.

William S. Deyoe was the owner of a number of farms and woodlots and tenement houses in Saratoga Springs and Schuylerville. He was engaged in lumbering, operated a sawmill and had a large number of men and teams employed in his business. On the 5th day of November, 1914, being about to enter St. Peter's Hospital in Albany for a serious operation which resulted in his death on March 25th, he requested the appellant to take charge of his farms and lots during his absence and placed in his hands three $1,000 bonds which are involved in this proceeding. Whether the bonds were given solely to make provision for funds for the purpose of carrying on the business or given outright as the appellant's absolute property is a question even on the testimony of the appellant himself to be determined by the surrogate.

He swore that the bonds were handed to him to keep himself supplied with money. Deyoe was going to the hospital and Sherman was to look after his business affairs while he was away. Sherman says that he understood from the conversation that Deyoe was giving him these bonds or two of them to carry on the business so far as necessary. At a later time Deyoe, he says, told him that all the bonds were his. While it was not necessary as a matter of law that Sherman's testimony should be corroborated to establish a gift it surely needed careful scrutiny and analysis to ascertain whether it had that reasonableness and probability in view of all the circumstances as would naturally lead to the belief that a gift had been made and intended. Sherman was the only one interested in establishing the gift, and was foreclosed from testifying as to transactions with the deceased under section 829 of the Code of Civil Procedure. His statements regarding the nature of his possession were received apparently on the ground that the respondent had opened the door to a full inquiry by one or two

questions asked by examining counsel. The situation and condition of the deceased, the necessities of the business, the work the appellant was to do and the manner of making the claimed gift are all matters to be considered by the trier of the facts in determining whether this testimony of a party interested proves by the necessary preponderance that a gift of the three bonds was actually made and was not intended as a means solely of raising funds to meet expenses.

In the light of the later decisions of this court and with these suggestions as to the application of the rule we send this case back to the surrogate for a retrial of the issue upon this question of gift.

The order of the Appellate Division and decree of Surrogate's Court should be reversed and a new trial granted, costs to abide the event.

McLAUGHLIN, J. (dissenting). The prevailing opinion proceeds upon the theory that the decree of the Surrogate's Court cannot be sustained because based upon "insufficient and improper findings." I have been unable to reach such conclusion. In my opinion the findings are not necessarily insufficient or improper when they are considered in the light of the evidence upon which they are based.

Notwithstanding the unanimous affirmance, if a finding be ambiguous or not clear, then we may look into the evidence for the purpose of ascertaining its true meaning or removing what is an apparent ambiguity.

The tenth finding is: "That at the time of the death of said William S. Deyoe, he was the owner of three coupon bonds of the American Wood Board Company, each of the par value of $1,000. * * *." The second conclusion of law, which is also a finding of fact, is: "That there is no sufficient proof that said bonds, or any of them, were ever given to said Sherman by said Deyoe." These findings unanimously affirmed are sufficient to

1919.]        Dissenting opinion, per McLaughlin, J.    [227 N. Y.]

sustain the decree nor are they rendered " insufficient and improper " by the twelfth and thirteenth findings.

The twelfth is: " That on the said trial in this accounting the contestant called the said Sherman as a witness and said Sherman testified that just before leaving for said hospital said Deyoe delivered to said Sherman said three coupon bonds, and at the same time said to Sherman that one of the bonds was his; * * * Sherman further testified that afterwards at the hospital said Deyoe told said Sherman that all the said bonds were Sherman's to do with as he pleased; * * *."

The thirteenth finding is: " That said Sherman testified truly in relation to said matter, but was not sufficiently corroborated by other evidence to establish his claim to said bonds."

It may well be that the learned surrogate believed Sherman testified truly, but it by no means follows that he believed Sherman's testimony established a gift of the bonds to him. I cannot believe that an experienced surrogate could, after considering all of Sherman's testimony, find that it established by clear and convincing proof a gift. The bonds were delivered to Sherman for a specific purpose, which was to obtain cash with which to discharge Deyoe's obligations while he was in the hospital.

Look at the situation. Deyoe was about to go to a hospital and undergo a serious surgical operation; he had several farms; was operating a sawmill; was taking the wood and logs from a certain lot, which job he was desirous of completing as speedily as possible; had several men and teams in his employ, and wanted Sherman to employ others if he could obtain them; wanted the men and teams paid as the work progressed; to that end he sent for Sherman, told him what he wanted, and then delivered to him the three bonds in question; for the sole purpose of supplying him with cash while Deyoe was absent. Sherman testified: " Q. Before Mr. Deyoe

went to Albany for his operation he placed you in charge of his farms, did he not? A. Yes. Q. And made provision for funds for you to use in that connection? A. Yes. Q. How much did he place in your hands? A. Three one thousand dollar bonds. Q. He gave you the bonds instead of the money? A. Yes." And at the same time Deyoe said to Sherman that "the bonds were just like so much ready money or one thousand dollar bills. * * * they were available for cash to the holder." Sherman also testified in answer to the question: "Did he say anything about where you were to get the money — were you talking with him about that question? A. As I testified, when he gave me the three bonds, he told me to keep myself supplied with money on the 5th."

It is undoubtedly true, when he delivered these bonds, that he said to Sherman one of them was his, not as a gift, but to use immediately in any way he saw fit in order to obtain money to pay the men and teams employed and discharge other financial obligations connected with Deyoe's business during his absence. What took place at the hospital six days later — Sherman in the meantime having paid out in the business in the neighborhood of seven hundred dollars — indicates that the bonds were not given as a present but to obtain the necessary funds to discharge Deyoe's obligations, and it is in this sense that the surrogate must have understood and construed the testimony. Sherman went to the hospital on the 11th of February for the purpose of having Deyoe sign some certificates so that the coupons on the bonds could be collected. These coupons amounted to but a few dollars and undoubtedly Sherman told him what he had paid out intermediate Deyoe's going to the hospital and the date of that visit. At that interview Deyoe said to Sherman, according to the twelfth finding, that all the said bonds were Sherman's to do with as he pleased. He wanted to clothe Sherman with all the

indicia of ownership; he wanted him to act with the utmost freedom in carrying on the business and to that end, and for that purpose, he wanted to give Sherman, if necessary, power to sell the bonds, pledge them as collateral, or use them in any way he saw fit, in order to produce the desired result. That the bonds were not intended as a gift is evidenced from the words used, " to do with as he pleased." If a gift, these words meant nothing. A gift *in præsenti* transfers title absolutely from one to another and once that title is transferred the recipient of the gift, of course, can do with the object as he pleases. The donor strips himself of all interest and control and the recipient does not need to be told that he can do with the thing given as he pleases. This is the view which I think the surrogate took of this testimony as reflected by his findings.

The word " corroborated " as used in the thirteenth finding was used, I think, in the sense of established. The finding is not susceptible of a construction that the surrogate believed the gift had been made, but he is obliged to hold, as matter of law, that there being no evidence other than the testimony of Sherman a gift had not been proved. The true construction of the twelfth and thirteenth findings, it seems to me, as interpreted by the testimony of Sherman himself, simply means that while the surrogate believed that Sherman testified truly, nevertheless, his testimony did not sufficiently establish his claim to the bonds nor was there any other evidence bearing on that subject. Certainly these two findings did not destroy the effect of the first two findings which I have quoted, nor are they necessarily in conflict with them. Referring to the opinion of the surrogate this view is sustained. There, he says that the evidence is insufficient to establish a gift of the bonds. This view is also strengthened by the fact that after Sherman left the hospital with the certificates attached to the coupons, he immediately had one cashed and the proceeds of the other

he placed to the credit of Deyoe's account. So, in the light of all the circumstances, the surrogate might very well have reached the conclusion that Sherman told the truth, but that his claim to the bonds was not established by clear and convincing evidence, which is the standard laid down in numerous authorities.

If, however, I am wrong in this conclusion and the twelfth and thirteenth findings are to be construed as holding that Sherman's testimony did establish a gift of the bonds to him, but the surrogate thought he was obliged to hold, as matter of law, the testimony being uncorroborated, that a gift had not been established, then I think instead of ordering a rehearing before the surrogate, such rehearing should be had in the Supreme Court before a jury in Saratoga county. But it is suggested, not by counsel, that there is no power in this court to make such disposition of the case. I am unable to subscribe to the proposition that this court is so impotent that it cannot order a jury trial *in any case* where the ends of justice require it. That seems to have been the view of this court in *Matter of Hopkins* (176 N. Y. 595, 596). It is true the question there involved was whether or not a jury trial should be ordered under section 2588 of the Code of Civil Procedure, relating to the probate of wills, but the court took occasion to say that it might order a jury trial " in any other case where, in its opinion, it would seem that the ends of justice might be best promoted by such a course." Here, I think the ends of justice require, if a new hearing is to be had, that such hearing should be before a jury.

For these reasons I dissent from the conclusion reached by Judge Crane and vote to affirm the order and decree appealed from.

Hiscock, Ch. J., Chase, Cardozo, Pound and Andrews, JJ., concur with Crane, J.; McLaughlin, J., reads dissenting opinion.

Order reversed, etc.