In the Matter of the Estate of Daniel J. McGillicuddy,
Deceased.

Louis A. Cramer, Appellant; Annie McGillicuddy,
Administratrix of Daniel J. McGillicuddy, Deceased,
Respondent.

Second Department, November 23, 1920.

**Executors and administrators — claim against estate for balance
alleged to be due claimant from profits of joint enterprise — when
uncontradicted testimony of claimant's wife sufficient to support
claim — rule as to sufficiency of oral testimony to establish claim
against decedent's estate.**

A claim against the decedent's estate was based on a balance alleged to be
due from profits of certain joint operations between the claimant and
the decedent as contractors. The evidence in support of the claim con-
sisted of the uncontradicted testimony of the claimant's wife that the
decedent gave to the claimant, in her presence, a statement of the work
on which the balance was based, which was put in evidence, and promised
to pay claimant's one-half later, and that he repeated that promise several
times. The administratrix did not produce at the trial the books of
decedent nor did she submit any evidence whatever.

*Held*, that the testimony of the claimant's wife was amply sufficient to
support the claim and, standing uncontradicted though it was within the
power of the administratrix to contradict it if untrue, should have been
given full credit though she was strongly interested in the result, and,
therefore, the decree of the surrogate rejecting the claim should be reversed
and a new trial granted.

Although oral evidence on which it is sought to establish a claim against the
estate of a deceased person should be weighed by the trial court with
especial care, still the ordinary rule of mere preponderance of evidence
applies.

Appeal by the claimant, Louis A. Cramer, from that portion
of a decree of the Surrogate's Court of the county of Rockland,
entered in the office of said surrogate on the 14th day of
December, 1918, which rejected and disallowed the first claim
made by the claimant.

*Frank Comesky*, for the appellant.

*John F. McFarlane* [*Oswald A. Bauer* with him on the brief],
for the respondent.

MILLS, J.:

The claim as urged at the trial consisted of three items, viz.:

(a) For a balance of $3,631.50, represented by a certain written instrument furnished to the claimant by the deceased on August 10, 1913, as due from him to the claimant out of certain joint operations of theirs as contractors under the name of Mack Brothers.

(b) For the sum of $2,000 loaned by the claimant to the decedent on August 25, 1914; and

(c) For a further sum of $400 loaned by claimant to the decedent.

By stipulation the parties agreed that the entire claim should be tried by the surrogate upon the final accounting, and that course was taken. The surrogate took the evidence of the parties, which, as to the vital issue, was mostly confined to the testimony of the claimant's wife. He rejected the first item as not proven, but allowed the other two. He wrote and filed a lengthy opinion in which he reviewed the evidence and gave quite fully his reasons for rejecting the first claim or item. Its statement of the facts agreed substantially with that made in each brief submitted here. Those facts are the following: In the spring of 1911 the decedent and the claimant, who had worked for the decedent for several years as foreman in his contracting business, entered into a partnership for the doing of certain contract work in the said firm name, chiefly upon street improvements. Thereafter they performed certain such work. The claimant admitted that the profits of all of such, except those involved in the said first item, had been settled and divided between them. The claimant's wife testified that at the claimant's request the decedent, on or about August 10, 1913, gave to the claimant, in her presence, a statement of the " New York work " in his own handwriting, which was put in evidence as plaintiff's Exhibit 9, and promised to pay later on to the claimant one-half of the balance shown thereby. She also testified that he repeated that promise several times later, urging as a reason for the delay that he was temporarily hard up. Decedent died on July 10, 1915. The administratrix did not produce at the trial the books of decedent showing that New York busi-

ness, or account for her failure to do so, although they were in the evidence traced to the decedent's possession. Two brothers of the decedent were present at the former trial, but apparently not at this; at least neither testified here. Indeed, the administratrix submitted no evidence upon her part. The partnership was limited to certain particular contracts, and the decedent at the same time was engaged upon other contract work in which the claimant had no interest. Afterwards the claimant upon other contracts acted for the decedent in his old position as foreman. There are some items in the said statement as to which there was no evidence that the claimant had ever had any interest therein.

The surrogate's opinion, which is very well and clearly expressed, indicates that he rejected that first item upon the following grounds or reasons, namely:

(a) The statement of August 10, 1913, does not upon its face indicate that it was a statement of account between the parties, an acknowledgment of indebtedness by decedent to claimant; but upon the other hand it looks more like a statement of the financial condition of " Mack Brothers " with reference to the New York business which, at least up to about that date, had been conducted by the decedent alone; and as to several of the items in the statement there is no proof that claimant was ever interested in them.

(b) The sole evidence converting that statement into an obligation of decedent is given by the claimant's wife from her recollection of alleged oral statements, by and between her husband and decedent, made several years before she testified. She is morally, at least, strongly interested in the result and, therefore, should be given little credit.

(c) Claimant, between the giving of the statement of August 10, 1913, and decedent's death on July 10, 1915, is not shown to have ever demanded from decedent payment of his alleged share of the balance shown by the statement; and

(d) It was the general habit of the parties to promptly settle for each job when finished and at once divide the profits thereof between them. Indeed, the claimant's wife admitted that this was true as to every job other than those referred to in the statement.

These several reasons, at least except the first, seem sus-

tained by the record as true and to be cogent and weighty.
They would, in my judgment, be ample to sustain the decree
appealed from, except for the fact that the defendant, the
administratrix, appears to have withheld from the court the
decedent's books, from which the statement apparently was
made, and also other material evidence which naturally would
be available to her. The testimony of the claimant's wife, if
credited, was ample to sustain the claim, and that testimony
stood uncontradicted when apparently, if it were untrue,
material contradiction was within the power of the defendant.
From various expressions in the opinion of the learned sur-
rogate and from the general situation it seems quite probable
that, at the trial held in 1918, he was undoubtedly very
strongly impressed and influenced by the theory, then prevalent
with trial judges and lawyers, that the Court of Appeals in
a considerable series of cases had held, almost as a rule of law,
that where a claim against a decedent's estate is attempted
to be established in substantial part by oral proof, especially
of recollection of oral statements made by the decedent, the
evidence to sustain the claim must be exceedingly strong,
clear and convincing; so much so as practically to amount to
a demonstration, to even fit the criminal requirement of
" beyond a reasonable doubt." Although perhaps the latter
expression may not be found in any of the opinions in those
cases, yet it seems but a fair summary of their result, or at
least of their general trend. It may safely be said that during
that period in that court capital convictions were there sustained
upon evidence of less probative force than was there held to
be insufficient to sustain the allowance of such a claim. The
case of *Tousey* v. *Hastings* (127 App. Div. 94; 194 N. Y. 79)
may be cited as being of that general character. In that case,
which had been tried at the Westchester Special Term with
decision for the plaintiff, allowing the claim, this court in
effect held that the leading witnesses for the defendant,
testifying to their recollections of oral statements by the
decedent made some years before, were to be discredited
because they were entirely disinterested and, therefore, not
likely to remember with accuracy such statements, even
although the trial justice had been convinced of the truthful-
ness of the testimony (127 App. Div. 97); and the Court of

Second Department, November, 1920.     [Vol. 194.

Appeals in its opinion, by implication at least, seemed to approve that view; certainly it did not dissent therefrom. However all this may be, since the trial of the instant case in December, 1919, that court in *Matter of Sherman* (227 N. Y. 350, Judge CRANE writing) substantially modified, if not recanted, its said position, or at least modified materially our views of its holdings in that regard. Its opinion in that case with superior logic and sounder legal and common sense denies that there is any such rule of law and asserts that in such a case the ordinary rule of mere preponderance of evidence still applies, although the trial tribunal should weigh such evidence with especial care. In 1918, a year before that latter decision, the surrogate, in common with trial judges generally, may well have acted upon the said theory previously generally held and, therefore, disparaged the testimony of the claimant's wife far more than the true rule, as declared in that decision, warranted. From the language of the opinion and the general situation I think that he did so. As far as the printed record goes, I perceive no reason to disbelieve her, and I think that, with the defendant withholding from the trial tribunal proof apparently available to her and failing to account for its absence, the surrogate might better have credited the positive and directly uncontradicted testimony of the claimant's wife. It may be noted also that the claimant's failure to press the decedent for payment might be considered well explained by the testimony of the claimant's wife to the effect that the decedent repeatedly asked for delay in making the payment and promised to make it later.

I conclude, therefore, that in the interest of justice this court should reverse the part of the decree appealed from and order a new trial as to the first item or claim.

Hence, I advise that the part of the decree appealed from be reversed and a new trial ordered in the Surrogate's Court of Rockland county as to the first claim or item, with costs to abide the event.

JENKS, P. J., RICH, PUTNAM and KELLY, JJ., concur.

Decree of the Surrogate's Court of Rockland county, in so far as appealed from, reversed, and a new trial ordered in said court as to the first claim or item, with costs to abide the event.