No. 28,633.

CHARLES W. BEEBEE, as Administrator of the Estate of Andrew S. Beebee, Deceased, *Appellee* and *Cross Appellant,* v. LUSENA B. PETERSON, *Appellant* and *Cross Appellee.*

(285 Pac. 616.)

Opinion filed March 8, 1930.

*C. L. Kagey* and *L. M. Kagey,* both of Beloit, for the appellant.

*Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: This action was brought by an administrator against an heir seeking an accounting and also recovery of property obtained by the defendant from the deceased through undue influence, and because of a fiduciary relation between defendant and deceased. The plaintiff, Charles W. Beebee, as administrator of the estate of Andrew S. Beebee, and likewise as administrator of the estate of Anna L. Beebee, filed two separate actions in said estate against the defendant, Lusena B. Peterson. The actions were consolidated for trial, and the issues brought by the administrator of the estate of Anna L. Beebee were found in favor of defendant. An appeal therefrom was taken, but that matter is not now before the court. In the case brought by the administrator of the estate of Andrew

S. Beebee, judgment was awarded against the defendant by the court upon two items therein and the defendant, Lusena B. Peterson, appeals therefrom. The plaintiff likewise perfects a cross appeal as to the items found in favor of the defendant.

In substance the petition of the plaintiff charged that he and the defendant, Lusena B. Peterson, were all the heirs at law of Andrew S. Beebee, deceased, plaintiff and the defendant being brother and sister; that over a period of years the defendant had by reason of her conduct toward her parents caused them to become prejudiced against the plaintiff and that she had by means of undue influence caused the parents to deliver over to her and into her possession all of their property of the value of approximately $19,000. Plaintiff charged that the defendant was in a position of trust and confidence with her parents; that she got them to give her a written power of attorney, and that for a period of years running from a time prior to 1920 until the death of her parents she had through her influence and domination carried out a plan and scheme to control the parents in their business affairs, and by reason of the authority granted to her in the power of attorney and undue influence exerted by her she had gained absolute control of all the property, and had refused in any manner to account for the same. Plaintiff asked that defendant be required to account for all of the funds belonging to the estate of Andrew S. Beebee, which had been converted to her own use, and for all sums of money and property of every kind and nature which belonged to Andrew S. Beebee in his lifetime, and that upon such accounting she be required to pay over and return to the administrator, for the purpose of distribution in accordance with the statute of descents and distributions, all of the assets of Andrew S. Beebee.

The defendant filed answer which set forth a general denial and also accounting for the various properties and funds and told in detail what had been done with them and how the money had been used or invested and tracing the disposition of the various items, and specifically claimed that certain items had been given to her by her parents. She set up a description of the various properties and bonds owned by her father and of the transactions had. In addition, by way of a cross petition, she alleged that her parents had lived with her during the latter years of their lives; that she had provided board and room for them; had paid doctor bills and

nurse hire; had furnished room and board for two nurses; that she had rendered valuable service in looking after and caring for her parents, and that they, taking all of these things into consideration and the fact that they had not been well treated by their son, the plaintiff, had delivered over the property to her with the intention that she should have all of said property; that all of the assignments and conveyances were made to her without undue influence on her part. On her cross petition she prayed for judgment for $9,807.

At the conclusion of the trial the court made findings of fact and conclusions of law as follows:

"The court further finds that the defendant has accounted in full for all money and property coming into her possession belonging to Anna L. Beebee, and all property and money coming into her possession and belonging to Andrew S. Beebee, except as will be hereinafter noted.

"The court finds that there is nothing due from defendant to the estate of Anna L. Beebee, and that the policy of insurance in the Bankers Life Company belongs to the defendant; that the proceeds of said policy having been paid into court by said insurance company and amounting to $2,221.76, said company should be released from all further liability thereon and said money paid to the defendant.

"That the cross petition of the defendant in both cases should be denied for the reason that no express or implied contract has been proven to have existed between the defendant and her parents in either case.

"The court further finds that it was the intention of both Andrew S. Beebee and Anna L. Beebee to reward the defendant for her untiring devotion and care of them in their declining years by giving to her all of the remainder of their property, but that their efforts to do so are ineffective and void in the following particulars, to wit:

"That the bonds of the Kansas Power Company purchased by check dated April 18, 1924, amounting to $1,987 were paid for from money of Andrew S. Beebee and no transfer or assignment of said bonds appears in the evidence. That the administrator of the estate of Andrew S. Beebee in case No. 8481 should have judgment against the defendant for the amount paid for said bonds, $1,987, with interest from August 4, 1925, at 6 per cent per annum, amounting to $226.40, and making a total judgment on account of said bonds in the sum of $2,213.40.

"That the note of Lusena B. Peterson to Andrew S. Beebee for $3,500 and dated June 27, 1923, defendant's exhibit No. 2, was intended by Andrew S. Beebee to be a gift causa mortis to the defendant, but that his attempt to make said gift is null and void because no delivery of the same was ever made to the defendant or to anyone for her. That the administrator of Andrew S. Beebee in case No. 8481 should have judgment against the defendant on account of said note in the amount of $3,500 with interest from June 27, 1923, to this date at 4¾ per cent, amounting to $664.80, or a total judgment on account of said note of $4,164.80. That the judgment of $2,213.40 should

bear interest from this date at 6 per cent per annum and the judgment for $4,164.80 should bear interest from this date at 4¾ per cent per annum.

"It is therefore by the court considered, ordered, adjudged and decreed that the plaintiff have and recover nothing from the defendant, Lusena B. Peterson, in case No. 8480, and that the defendant Peterson have and recover nothing upon her cross petition in said case.

"It is further by the court ordered that the defendant, Lusena B. Peterson, have and recover of and from the Bankers Life Company of Des Moines, Iowa, the sum of $2,221.76 heretofore by said Bankers Life Company paid into court be paid to the defendant, Lusena B. Peterson, and it is further ordered that the defendant the Bankers Life Company be relieved from further liability herein.

"It is further by the court considered, ordered, adjudged and decreed that the plaintiff do have and recover of and from the defendant, Lusena B. Peterson, in case No. 8481, the sum of $2,213.40, together with interest thereon at the rate of 6 per cent per annum from this date, and a further sum of $4,164.80, together with interest at the rate of 4¾ per cent per annum from this date, and that plaintiff have further judgment against the defendant, Lusena B. Peterson, upon her cross petition herein.

"It is further by the court ordered that the costs of said actions, Nos. 8480 and 8481, be paid one-half by the plaintiff and one-half by the defendant, Lusena B. Peterson."

The appellant contends that the court erred in rendering judgment against her for the $3,500 note of June 27, 1923, and the Kansas Power Company bonds, and alleges that the evidence shows that the bonds were properly transferred to her before her father's death, and that the note was given to her as a gift *causa mortis*.

The court found that it was the intention of Andrew S. Beebee that the note should be a gift *causa mortis*, but that the attempted gift was null and void because no delivery was proven.

The appellant now contends that there was sufficient evidence to show a delivery in that the note was produced by her at the trial and was put in evidence by her as an exhibit. She sets out that the circumstantial evidence showed that she had obtained possession of the note and had such possession on the death of her father, but the court found that this evidence was insufficient to establish a delivery. Of course, under the law, appellant could not go on the stand and testify to an actual delivery made by her father, because he was deceased, and she was therefore precluded from showing a delivery. That is her misfortune. The appellee urges that in view of the fact that appellant had the power of attorney from her father and was looking after his business, that the note was in her possession where it would properly be expected to be found under such

circumstances, and that in view of the position in which she stood toward her father—namely, that of agent and confidential adviser— the possession of the note was not sufficient proof of delivery. In view of the positive finding of the court on this point and the state of the record, we feel that the court's decision on the question of delivery was correct.

The appellant further argues that the transfer of the note was not a gift *causa mortis*, but that in view of the court's finding that it was the intention of Andrew S. Beebee to reward her, the indorsement on the back of the note did not necessarily mean a gift, but a payment of indebtedness. The trouble with this argument is that the court found that there was neither an express nor an implied contract between the appellant and her father. Neither was there any showing that he was indebted to her in any way.

In *Calvin v. Free*, 66 Kan. 466, 71 Pac. 823, it was said:

"To constitute a gift *causa mortis,* the gift must be made in contemplation of the near approach of death, to take effect absolutely only upon the death of the donor and before that of the donee. There must be a delivery of the property to the donee or some one for him. Subject to the right of recall in case he does not die, or in case the donee dies first, the donor must part with all dominion over the donated thing." (Syl. ¶ 1.)

The note in controversy bore the following indorsement on the back thereof: "In case of my death before maturity this note becomes the property of Lusena B. Peterson. (Signed) A. S. Beebee." It must be remembered that the court below was the trier of the facts. From the above indorsement the court inferred that there was an intention to make the note a gift *causa mortis*. The trial court was not satisfied that the evidence was sufficient to prove a delivery of this note in contemplation of death. In 12 R. C. L. 955 it is pointed out that the doctrine of gifts *causa mortis* was derived from the Roman civil law. After quoting the definition as laid down by Justinian, the text further states:

"The doctrine of gifts *causa mortis* as thus defined in the civil law was received in England only so far as attended with delivery or what the civil law calls 'tradition' and it was declared that tradition or delivery is necessary to make a good *donatio causà mortis*. . . . It is frequently said that gifts *causa mortis* are not favored, but are against the policy of the law, the reason assigned being that they are donations made without the safeguards cast by the law around the execution of wills. The suggestion, however, that the law treats such transactions with disfavor and that they are not to be sustained where this can be avoided is understood as having reference to the occasion

presented for fraud and mistake in cases of this kind, and therefore that care should be used to sift the evidence." (p. 956.)

The essential element of delivery which was added to the definition by the English courts has been adopted and followed by the courts in the United States. Since there must be a delivery it follows that there must be evidence to prove the fact of delivery to the satisfaction of the trial court. The trial court, after carefully sifting the evidence, found that it was insufficient to establish a delivery. We have examined the record and agree with the trial court.

As to the second specification of error urged by the appellant—namely, the judgment of the Kansas Power Company bonds—the court found that these bonds were never properly transferred or assigned to the appellant. The appellant contends that the memorandum which was introduced in evidence reading, "5-8-1924; transfer my government bond to Lusena B. Peterson," amounted to an assignment of these Kansas Power Company bonds; that the bank pinned the order to the bond register and transferred the bonds to Lusena B. Peterson. It appears from the evidence that there were $2,000 in government bonds which were transferred to Lusena B. Peterson on May 8, 1924. The memorandum above set out relates to these government bonds and the court evidently so construed it. It therefore could not amount to a transfer of the Kansas Power Company bonds. The record fails to show any proper transfer or assignment of these bonds, and the judgment of the court in so finding is correct.

With reference to the cross appeal taken by the appellee relative to the $2,000 government bonds, which were transferred to the appellant by the written order of May 8, 1924, introduced in evidence, and the further complaint made by the cross appeal that the appellant should account for all funds deposited by her in the Jamestown bank, we see no error in the record. The court having found that the parents intended to give her all of the property, concluded that there was sufficient evidence in the record to establish the fact that they had carried out such intention and had given her all of the other property except the $3,500 note and the Kansas Power Company bonds, upon which it rendered judgment against the appellant. Since the intention of the father had been executed by valid transfer of possession the appellant was entitled

to retain the bonds and the funds which had been deposited in the bank and withdrawn by her.

In view of the state of the record we see no reversible error here in behalf of the appellant or cross appellant. The judgment of the lower court is therefore affirmed.