IN RE ESTATE OF COLLINSON, ETC. ET AL. *v.* McNUTT
ET AL., ETC.

[No. 28,844. Filed June 2, 1952. Rehearing denied October 6,
1952. Separate Opinions filed November 21, 1952. Petition
for rehearing overruled February 4, 1953.]

*Leo X. Smith* and *Albert Stump* both of Indianapolis,
for appellant.

*Victor R. Jose, Jr.* of Indianapolis, for appellee.

BOBBITT, J.—This action was transferred from the Appellate Court under §4-215, Burns' 1946 Replacement, Acts of 1933, ch. 151, §1, p. 800. Following oral argument which was had before this court and after further careful consideration, it developed that the judges participating held widely divergent views as to the principles of law which should govern the decision of the case, and a majority could not agree.

Draper, J., having been a member of the Appellate Court at the time the action herein was under consideration by that court, did not participate.

Jasper, C. J., and Bobbitt, J. are of the opinion that the decision of the trial court should be affirmed, while Emmert and Gilkison, J. J., are of the opinion that the decision of the trial court should be reversed and appellant granted a new trial.

The effect of such disagreement in this case is different from that in *Gary Rys. Inc.* v. *Chumcoff* (1952), 230 Ind. 309, 103 N. E. 2d 203, because in that case the disagreement was on the question of granting the petition to transfer and since there was not a majority of the judges there participating in favor of granting the petition to transfer, it was denied and the opinion of the Appellate Court stood as the law of the case, while in the case at bar a majority of the judges participating approved the petition to transfer and the case was thereby taken over by this court and the opinion of the Appellate Court vacated, thus placing the case at bar in the position of an appeal to this court where, when a majority of the judges participating fail to agree, the decision of the trial court is affirmed. Section 2-3232, Burns' 1946 Replacement, Acts 1881 (Spec. Sess.) ch. 38, §654, p. 240.

The four judges participating being equally divided at the last term of court, and being still equally divided

at this term, the judgment of the trial court is affirmed without costs. Section 2-3232, Burns' 1946, Repl., supra.

Separate opinions covering material points in the case arising from the record will follow in this term.

NOTE.—Reported in 106 N. E. 2d 225.


## SEPARATE OPINION

BOBBITT, J.—This action grows out of an alleged gift *causa mortis.*

The deceased Emily Collinson was a lady of some seventy years of age who lived with an elder sister. She depended upon the Catholic Charities Bureau for nursing care. Appellant, who was a registered nurse and working under the direction of said bureau, was assigned to visit Miss Collinson at regular intervals. However, because of the condition of the deceased and her elder sister, appellant stopped frequently at their home where she cared for and performed nursing and other services for the deceased.

In January, 1943, decedent became seriously ill and appellant made necessary arrangements and took decedent to St. Vincent's Hospital, driving her there in her (appellant's) own car. At the time decedent had with her a small package and on the way to the hospital Miss Collinson said to appellant: "Here is a box, I am giving it to you and if I die it is yours. I don't want anyone else to have it." After Miss Collinson was settled in the hospital appellant took the box to the office of the bureau and gave it to the director who put it on the safe in the back of his office.

Miss Collinson died February 9, 1943, without having recovered from the illness which sent her to the

hospital. On the day of her funeral appellant called appellee by telephone and told him that Miss Collinson had given her a box and that she did not know the contents thereof. He then asked the whereabouts of the box and where he could meet appellant for the purpose of getting it. Appellee later called for appellant at the Y. W. C. A. and drove her in his car to the office of the bureau where the box was delivered to them by the director. Appellant testified that on the way to the office she asked appellee whether, because there was no witnesses to the gift and there was a will, it could be a legal gift, and he answered: "I don't know that it is a legal gift." The box was opened by appellee and found to contain $11,577 in cash. Appellee then said he thought the money was a part of the estate. Thereupon the director of the bureau said: "Well, Helen said all along if it did not belong to her she did not want it," and asked appellee if he wanted to take the money with him. Appellee replied that he did not because it was after banking hours and arrangements were then made with the director and his secretary to meet appellee at the bank the next morning where the money was delivered and inventoried as an asset of the estate.

Appellant contends that the undisputed evidence brings the alleged gift within the definition of a gift *causa mortis.*

*First:* Gifts *causa mortis* are not especially favored in law because of the opportunity they afford for the perpetration of frauds. Yet, when the facts essential to consummate any such gift are clearly and satisfactorily shown, they are upheld and they are not contrary to public policy. *Bulen* v. *Pendleton Banking Co.* (1948), 118 Ind. App. 217, 78 N. E. 2d 449, 456; *Hinton, Admr.* v. *Bryant* (1934), 99 Ind.

App. 38, 190 N. E. 554; *Caylor* v. *Caylor's Estate* (1899), 22 Ind. App. 666, 52 N. E. 465, 72 Am. St. Rep. 331.

While this court has not refused to enforce the above rules, the doctrine announced therein should not be extended beyond its present limits and the evidence in support of a gift *causa mortis* must be not only clear and convincing, but it will be scrutinized with care. Page on Wills, Vol. 4, §1662, p. 749, and §1701, p. 819.

There is no statutory law in Indiana defining or regulating gifts *causa mortis* and it, therefore, comes to us as a part of the common law. At common law no specific number of witnesses is required to establish a gift *causa mortis* but in order to establish such gift there must be clear and convincing evidence and the alleged gift must be accompanied by a delivery of the subject matter. 24 Am. Jur., Gifts, §129, p. 797.

In considering any rule concerning the evidence required to establish a gift *causa mortis*, we should examine the public policy of our state on testamentary grants, as evidenced by our statutes, in order to secure a safe foundation on which to proceed. The Indiana statutes provide that a will shall be in writing, signed by the testator, and attested and subscribed in his presence by two or more competent witnesses. Section 7-201, Burns' 1933 Replacement, 2 R. S. 1852, ch. 11, §18, p. 308.

An unwritten will (nuncupative) is recognized by statute in Indiana only when the value of the property bequeathed is less than one hundred dollars, and such will must be made in the last sickness of the testator and the subject thereof must be reduced to writing within fifteen days after it shall have been declared and proved by two competent witnesses who shall have

heard the testator, in effect, request some of those present to bear witness thereto; and no such nuncupative will shall be proved after six months from the death of the testator, nor until his widow and heirs shall have reasonable notice of the time and place of proving the same. Section 7-202, Burns' 1933 Replacement, 2 R. S. 1852, ch. 11, §20, p. 308.

While I would not attempt to invoke the statutory provisions for proving nuncupative wills in proving a gift *causa mortis,* it nevertheless seems to me, in view of the policy adopted by the legislature in connection with the making of testamentary dispositions that it would be contrary to the general policy of the state to permit the establishment of a gift *causa mortis* where property of unlimited value might be claimed, on the sole uncorroborated testimony of the donee.

This court, in *Devol et al.* v. *Dye et al.* (1890), 123 Ind. 321, 324, 24 N. E. 246, laid down a rule prescribing the things essential to the consummation of a gift *causa mortis.* They are: "(1) The thing given must have been of the personal goods of the donor. (2) It must have been given while the latter was in peril of death, or while he was under the apprehension of impending dissolution from an existing malady; and, (3) the possession of the thing given must have been actually, or constructively, delivered to the donee, or to some one for his use, with the intention that the title should then vest conditionally upon the death of the donor, leaving sufficient assets in addition to pay his debts." This rule has been consistently followed in Indiana. See also: *Bulen* v. *Pendleton Banking Co.* (1948), 118 Ind. App. 217, 231, 78 N. E. 2d 449, *supra.*

"One who claims to hold property by gift *causa mortis* has the burden of proving the fact of the gift

and that it had all the material characteristics of such a donation; and the burden of proof to establish the gift is heavier than in the case of a simple gift inter vivos." 38 C. J. S., Gifts, §116b, p. 919; 99 Am. St. Rep. 916, par. b.

If a gift *causa mortis* is established in the case at bar it must rest on the testimony of appellant (donee) and the circumstances surrounding the alleged gift, for there were no other witnesses present at the time to corroborate or dispute the donee's testimony as to decedent's words of gift and the delivery of the property. There were certain circumstances from which the trial court might have drawn inferences in favor of a gift, while there were other circumstances which might logically have led to a different conclusion. It was for the trial court to weigh the evidence and to consider the circumstances in favor of and against the establishment of a gift *causa mortis*.

A gift *causa mortis* has been sustained upon the sole testimony of one competent, credible witness: *Thomas v. Lewis (Page v. Lewis)* (1892), 89 Va. 1, 15 S. E. 389, 18 L. R. A. 170, 37 Am. St. Rep. 848; *Apache State Bank v. Daniels* (1911), 32 Okl. 121, 121 P. 237, 40 L. R. A. (N. S.) 901; Ann. Cas. 1914A, 520, but I have been able to find only one authority where a gift has been established by the sole uncorroborated testimony of the donee. The Court of Appeals of New York in *In re Sherman* (1919), 227 N. Y. 350, 125 N. E. 546, in deciding whether an alleged gift (certain bonds) by the deceased Deyoe to Sherman made shortly before Deyoe's death could be established by the uncorroborated testimony of the donee Sherman, at p. 547, (125 N. E.) said:

"While the testimony of the appellant was not required as a matter of law to be corroborated by other evidence in order to make out a gift, yet it did call for a very careful scrutiny and examination in accordance with the suggestions made in Ward v. N. Y. Life Ins. Co., 225 N. Y. 314, 322, 122 N. E. 207, 209.

\* \* \* \*

"While it was not necessary as a matter of law that Sherman's testimony should be corroborated to establish a gift, it surely needed careful scrutiny and analysis to ascertain whether it had that reasonableness and probability, in view of all the circumstances, as would naturally lead to the belief that a gift had been made and intended."

However, in that case it was not contended that the alleged gift was a gift *causa mortis*. The decision of the trial court, which held that the evidence was insufficient to establish a gift, was reversed for retrial of the issue on the question of gift. Cf: *In re Downey's Estate* (1947), 68 N. Y. S. 2d 407; *In re Buoninfante's Estate* (1925), 212 N. Y. S. 265, 125 Misc. 907; *In re Housman's Estate* (1918), 169 N. Y. S. 277, aff. 182 App. Div. 37, 121 N. E. 357.

The preponderant rule is that a gift *causa mortis* cannot be established by the sole uncorroborated testimony of the donee. *Gambill* v. *Hogan* (1947), 30 Tenn. App. 465, 207 S. W. 2d 356; *Quarles* v. *Fowlkes* (1927), 147 Va. 493, 137 S. E. 365, 369; *Beebee* v. *Peterson* (1930), 130 Kan. 14, 285 P. 616; *Hecht* v. *Shaffer* (1906), 15 Wyo. 34, 85 P. 1056; *Kenney* v. *The Public Administrator* (1853), 2 Bradf. (N. Y.) 319.

The testimony of the donee may be considered in establishing a gift *causa mortis, Durham* v. *Shannon* (1888), 116 Ind. 403, 407, 19 N. E. 190; but such testimony must be supported either by other competent, direct or circumstantial evidence, or by cir-

cumstances surrounding the gift from which proper inferences may be drawn and which are such as to lead inescapably to the establishment of such a gift.

I have searched the record carefully for the purpose of ascertaining whether the testimony of appellant is supported by any circumstances surrounding the alleged gift which would lead inescapably to the establishment of the gift and find no such circumstances.

Appellant has failed to sustain her burden of proof to establish the alleged gift *causa mortis.*

*Second:* Appellant further contends that the court erred in excluding certain testimony offered by her in an attempt to show a relationship of attorney and client between appellant and appellee, McNutt, and that relying upon appellee's advice as an attorney she surrendered the money in question to him as executor of the estate of Emily Collinson. She further contends that said money was turned over to appellee as the executor of said estate because of a mutual mistake of fact or of law resulting from the mistaken advice which appellee is alleged to have given appellant. If appellant did consult appellee as an attorney in the confidential relationship which exists between attorney and client, he then owed to her a special duty to protect her interest. Since he was also the executor of the estate to which he advised appellant to surrender the money, it is readily apparent that his interests were adverse to those of appellant.

It is universally held that "An attorney is by virtue of his office disqualified from representing interests which are adverse in the sense that they are hostile, antagonistic, or in conflict with each other." *State* v. *Robbins* (1943), 221 Ind. 125, 149, 46 N. E. 2d

691; *Bowman* v. *Bowman* (1899), 153 Ind. 498, 55 N. E. 422; *Wilson* v. *State* (1861), 16 Ind. 392; *Miedreich* v. *Rank* (1907), 40 Ind. App. 393, 82 N. E. 117; 7 C. J. S., Attorney and Client, §47, p. 823.

Where an attorney acts for opposing parties in contested matters his conduct is open to the most careful scrutiny. *Sun Building & Loan Ass'n. of Newark* v. *Rashkes* (1936), 119 N. J. Eq. 443, 183 Atl. 274.

No question of intentional fraud has been raised or intimated. Appellee being a reputable attorney in good standing at the bar of his home city and state, we believe the rule which here applies was quoted by Gilkison, J. in his dissenting opinion in *State ex rel. Young* v. *Niblack* (1951), 229 Ind. 596, 612, 99 N. E. 2d 839, as follows:

> " '(5) The rule [that an attorney cannot represent adverse interests] is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well *to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties,* or be led to an attempt to reconcile conflicting interests rather than to enforce, to their full extent, the rights of the interest which he should alone represent.' " (My italics.)

Without attempting to say whether or not the evidence is sufficient to establish the relationship of attorney and client between appellant and appellee, it is sufficient to say that the advice given appellee by appellant, which resulted in the delivery of the money in question to appellee as executor in said estate, is in accord with the decision of the trial court, the opinion of the Appellate Court,[1] and with the views expressed in this opinion. It may be argued that the

---

[1] *In re Collinson's Estate* (1950), 93 N. E. 2d 207.

delivery of the money, representing the alleged gift to appellee by appellant, shifted the burden of proceeding and forced appellant into the position of prosecuting an action against appellee, as executor, to recover the money, yet the burden of proof to establish the gift did not change. This burden was at all times upon appellant—whether she was the plaintiff in a suit to recover the money, or the defendant in an action by appellee as executor to recover the money for the estate. In either event her sole uncorroborated testimony would not be sufficient to establish a gift *causa mortis*.

The record in this case discloses no mistake of fact or law which resulted from the advice given appellant by appellee. This then leaves only the question of the harm, if any, which appellant might have suffered by reason of being forced into the position of prosecuting the action herein. Under the circumstances I do not consider this sufficient to justify a reversal of the decision of the trial court.

The actions of appellee in so advising appellant while he represented interests which were adverse to hers, while probably ill advised, do not under the circumstances in this case, constitute grounds for reversal of the decision of the trial court. Cf: *Ayres* v. *Smith* (1949), 227 Ind. 82, 84, 84 N. E. 2d 185.

*Third:* Appellant further contends that the trial court erred in entering a second judgment as to the individual defendant before the close of the entire case.

The gist of the action against appellee as an individual is that he is answerable in tort for wrongfully withholding from appellant the money represented by the alleged gift because of the confidential relationship which appellant claims existed between them as attorney and client, and because his interests were adverse

to hers, and further because he gave her unsound advice upon which she relied. As has already been stated, the correctness of the advice given has been established.

Under the facts and circumstances of this case, where there is no evidence that the advice given to appellant by appellee was wrong, and where there is no showing except a good faith effort on the part of the executor of the estate to protect it from doubtful claims, no good purpose could be served by holding the executor as an individual personally liable then requiring him to seek reimbursement from the estate.

There was no error in entering separate judgment as to appellee in his individual capacity at the close of appellant's evidence.

*Fourth:* No question is presented by appellant's contention that the decision of the trial court is not sustained by sufficient evidence because the burden was upon appellant to establish the allegations of her complaint, and a decision against her cannot be attacked upon the ground that there is insufficient evidence to sustain it. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669.

Appellant may, however, properly assert that the decision of the trial court denied her the relief to which she was entitled under the evidence and hence was contrary to law. *Pokraka* v. *Lummus Co., supra; Wilson, Admx.* v. *Rollings* (1938), 214 Ind. 155, 158, 14 N. E. 2d 905.

*Fifth:* The will of decedent, Emily Collinson, which, after providing for the payment of debts and funeral expenses, gives one-half of all decedent's property to a nephew and his wife, or the survivor of them, and the

remaining one-half of all said property to appellant, was admitted in evidence over appellant's objection. The will was properly admitted in evidence for the purpose of showing the decedent's affection and regard for appellant. *Wittenbraker, Admr.* v. *Dremstett* (1918), 187 Ind. 154, 118 N. E. 682; 38 C. J. S., Gifts, §117, p. 919.

It cannot be said from an examination of the record that appellant was denied the relief to which she was entitled under the evidence and the decision of the trial court was, therefore, not contrary to law.

In view of the decision reached, it is not necessary to discuss other questions raised by appellant.

The judgment of the trial court should be affirmed.

Jasper, C. J., concurs in the foregoing opinion.

Draper, J., not participating.


## SEPARATE OPINION

EMMERT, J.—This controversy arises out of an alleged gift *causa mortis*. The donee first instituted an action against the appellee individually in the Marion Superior Court for the recovery of $11,577.00 which she claimed had been given her *causa mortis*. The trial court abated the action on the ground that the Marion Superior Court had no jurisdiction for the reason that jurisdiction was vested in the Marion Probate Court where the estate was pending. The Appellate Court in *Ostheimer* v. *McNutt* (1946), 116 Ind. App. 649, 66 N. E. 2d 142, affirmed a judgment of the trial court, and we denied transfer. The Appellate Court stated that "The cause of action she asserts is not a claim

against the estate of Emily Collinson, deceased, and the procedure for its enforcement is not controlled by §6-1001, Burns' 1933. In construing this statute the Supreme Court said in *Williams* v. *Williams, Admr.* (1940), 217 Ind. 581, 29 N. E. 2d 557, that the term 'any claim' as used therein 'is generally construed to mean debts or demands of a pecuniary nature which could have been enforced against a decedent in his lifetime and could have been reduced to a simple money judgment.' The facts constituting the appellant's cause of action occurred after the death of Emily Collinson and obviously such action could not have been enforced against her in her lifetime." This reasoning became the law of the case and was binding upon the Probate Court of Marion County as well as this court in subsequent proceedings. *State ex rel. Joint Co. Park Bd.* v. *Verbarg* (1950), 228 Ind. 280, 91 N. E. 2d 916.

However, the Appellate Court specifically declined to decide whether the action should be brought against the executor individually or against the executor in his fiduciary capacity by the following language: "Whether the general rule is relaxed in the present case and the appellant's action should have been brought against the appellee in his representative capacity, we find it neither proper nor essential to decide because the basic problem involved in this controversy is a possible conflict of jurisdiction over the same property between two co-ordinate courts."

Before the decision in *Isbell* v. *Heiny, Administrator* (1941), 218 Ind. 579, 33 N. E. 2d 106, the rule was well settled in Indiana that a claimant could not sue an administrator or executor of an estate for replevin of goods belonging to the claimant. *Rose* v. *Cash* (1877), 58 Ind. 278; *Davis* v. *Schmidt* (1892), Ind. App., 31

N. E. 840. The rule is correctly stated in 1 Henry, Probate Law and Practice (5th Ed.) p. 591, §467, as follows:

"An administrator as such can not commit a tort; and if he becomes liable for a tort he is liable as an individual and not in his official capacity. Replevin is an action in tort, and in replevin against an executor or administrator he may defend by showing that he holds the property as administrator or executor, and that in that capacity he came into possession of it, and that it is the property of the estate. This being a possessory action the plaintiff can not recover unless he shows the right to the property replevied; hence it is a good defense to the action to plead property in a third person."

In *Isbell* v. *Heiny, Administrator* (1941), 218 Ind. 579, 33 N. E. 2d 106, *supra,* this court justified the rule which declared that an action for the possession of property alleged to belong to a claimant and not to the decedent by stating property held by an administrator was in *custodia legis* and cited as authority therefor *Stout, Administrator* v. *LaFollette, Administrator* (1878), 64 Ind. 365, and *State ex rel. Tuell* v. *Shelby Circuit Court* (1939), 216 Ind. 231, 23 N. E. 2d 425. The danger in using the principle of *custodia legis* as a legal Mumbo Jumbo to justify any sort of possession by an administrator seems obvious.

As to whether or not property is in *custodia legis* must depend upon whether or not the court had jurisdiction to obtain possession of the property. In *Stout, Administrator* v. *LaFollette, Administrator* (1878), 64 Ind. 365, *supra,* the certificates for the stock of the Gas Light and Coke Company stock were the property of the testator and the estate was still pending when a creditor of a legatee sought to levy an execution upon

them. In *State ex rel. Tuell* v. *Shelby Circuit Court* (1939), 216 Ind. 231, 23 N. E'. 2d 425, *supra*, the administrator, who was the surviving partner, voluntarily by his inventory and appraisement brought the property of the partnership within the jurisdiction of the Probate Court settling the estate. If another administrator had attempted to assert jurisdiction over the partnership property an entirely different question would have been presented.

The leading case of *Gilman* v. *Williams* (1859), 7 Wis. 329, clearly recognizes the necessity of jurisdiction before the property can be said to be in *custodia legis*. In that case respondents brought an action in replevin for two horses which had been taken by a Deputy United States Marshal on an execution issued out of the District Court. Respondents claimed the horses as exempt from levy and sale under the exemption law of Wisconsin, but the Deputy Marshal justifies his possession by virtue of the execution. The court clearly exposed the fallacy of the Deputy Marshal's position by the following language:

> "But how could they be in the custody of the law, unless the deputy marshal had a lawful right to take them into his custody? The idea that an unlawful custody of property can be the custody of the law is simply absurd, not to say preposterous. How it can be imagined that a deputy marshal or any other executive officer of the district court of the United States can illegally seize the property of a citizen, property outside of, and beyond the purview of his writ, and yet claim to hold it in the custody of the law by virtue of such illegal seizure, is beyond comprehension. It may be asked, who shall decide whether his custody is lawful or not? The answer is suggested by the statement of the proposition, viz.: any judicial tribunal competent to try the right or title to property, the claim to which may be disputed. . . .

". . . When property is lawfully taken, by virtue of legal process, it is in the custody of the law, and not otherwise. But it is monstrous to assume that the executive officer of any court can unlawfully seize property with or without process, no matter which, and then a claim can be set up that the custody which he may acquire, whether legal or not, is the custody of law, and hence sacred in his keeping, and to which he may arbitrarily apply the maxim, *'noli me tangere.'* That day has gone by."

If an administrator wrongfully acquired possession or property not belonging to the decedent it is difficult for me to see just how the court has acquired jurisdiction over that property. It might as well be contended that if an administrator had obtained possession of the property by larceny he could claim the benefit of the protection of his court by the rule of *custodia legis.*

Nor does the procedure suggested in *Isbell* v. *Heiny, Administrator* (1941), 218 Ind. 579, 33 N. E. 2d 106, *supra,* seem better than an action in replevin. This case suggested that a petition by the claimant stating his right of possession would require a rule to show cause against the administrator. Generally rules to show cause are required when some party is alleged to have violated some order or judgment of the court. In replevin the burden is on the claimant to recover on the strength of his own title. Nor does this court have any right to adopt a procedure which would deprive the claimant of his right to a trial by jury in a civil case under §20 of Article 1 of the Constitution. With the orderly method of procedure of replevin available against a personal representative individually there is no need for this court to lay down an anomalous procedure of a rule to show cause against an adminis-

trator. In replevin the defendant can justify his position by showing the property belonged to the decedent and is properly an asset of the estate. This creates no departure from the general rule that when a fiduciary or public officer acts *ultra vires* he can be held responsible and charged individually for his own unauthorized acts.

Moreover by preserving the right of replevin against a personal representative individually there would be no question as to the competency of the claimant to testify under §2-1715, Burns' 1946 Replacement.[1] *Sando* v. *Smith* (1925), 237 Ill. App. 570. The modern tendency has been not to extend the classes of incompetent witnesses beyond the clear provisions of the statute. 2 Wigmore, Evidence (3rd Ed.) §§578, 578a.

In *Devol et al.* v. *Dye et al.* (1890), 123 Ind. 321, 324, 24 N. E. 246, 7 L. R. A. 439, this court laid down the requirements for a gift *causa mortis* as follows:

> "The concurrence of three things is essential to the consummation of a gift *causa mortis:* (1) The thing given must have been of the personal goods of the donor. (2) It must have been given while the latter was in peril of death, or while he was under the apprehension of impending dissolution from an existing malady; and, (3) the possession of the thing given must have been actually, or constructively, delivered to the donee, or to some one for his use, with the intention that the title should then vest conditionally upon the death of

[1] "In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate: . . ." Section 2-1715, Burns' 1946 Replacement [Acts 1881 (Spec. Sess.), ch. 38, §276, p. 240].

the donor, leaving sufficient assets in addition to pay his debts."

It is unnecessary to state the evidence in detail which proved the gift in controversy met every requirement for a gift *causa mortis*. Emily Collinson, the donor and testatrix, was approximately sixty-nine years old when she became ill with a bad cold which soon developed into pneumonia. Helen Ostheimer, the appellant, was a visiting registered nurse employed by Catholic Charities Bureau of Indianapolis, and as a part of her work had visited with the donor once or twice a week for some time. Appellant had the donor cared for by a neighbor for a few days and when she continued to become more ill told her she should go to the hospital. The donor first went to her home and obtained a package which she held on her lap while appellant conveyed her in her automobile to St. Vincent's Hopital. On the way to the hopital the donor said to appellant, "Here is a box. I am giving it to you, and if I die it is yours. I don't want anyone else to have it. . . . put it in a safe place. Don't open it until I die. If I die it is yours. Don't give it to anybody." After appellant returned from the hospital the package was placed in the safe at the Catholic Charities. The donor was admitted to St. Vincent Hospital January 27, 1943, and died the following February 9th. Before her death she executed a will which had been drafted by the executor as her attorney.

The trial court at the conclusion of appellant's evidence in chief entered a finding and judgment for McNutt individually and overruled a motion to find for McNutt as executor. However, at the conclusion of all the evidence the trial court entered a finding and judgment for McNutt as executor.

The finding and judgment for the executor was correct, but the finding for McNutt individually was contrary to law. The testimony of the appellant was unimpeached, uncontradicted in any material matter, and was the only testimony as to what happened when the package containing the $11,577.00 was delivered. Every circumstance and reasonable inference both from her conduct and testimony corroborated her evidence as to the gift. A trial court "may not refuse to consider and weigh competent, uncontradicted evidence. Such a refusal by the trial court is not weighing the evidence, but ignoring it. *Roe* v. *Cronkhite Adm'rs.* (1876), 55 Ind. 183; *Davis* v. *Grater* (1878), 62 Ind. 408." *Egbert* v. *Egbert* (1948), 226 Ind. 346, 352, 80 N. E. 2d 104. It is not necessary to discuss other contentions about the manner in which the executor obtained possession of the package containing the money after the death of decedent. It is sufficient to note that the appellant waived none of her rights to the gift. Nor is it necessary to discuss other asserted errors such as the admission in evidence of the will of decedent and lengthy proof as to the value of services rendered by the executor and his attorney.

In my opinion the judgment should have been reversed and a new trial ordered.

Gilkison, J., concurring.

Draper, J., not participating.

NOTE.—Reported in 108 N. E. 2d 700.